IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOY KASPARIAN and RICHARD
FEDERICO, JR.,

Plaintiffs

v.

ELI LILLY AND COMPANY, et al.,

Defendants.

CIVIL ACTION No. 06-CV-00290 (RMC)

## DEFENDANT ELI LILLY AND COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Eli Lilly and Company ("Lilly") moves for Summary Judgment pursuant to

Fed. R. Civ. P. 56 on all claims asserted against it by Plaintiffs Joy Kasparian and Richard

Federico, Jr. (Counts I through VI) on the ground that there is no genuine issue of material fact

and that Lilly is entitled to judgment in its favor as a matter of law.

Lilly is entitled to summary judgment on these counts because Plaintiffs have not and can

not come forward with any evidence that Ms. Kasparian's mother's treating and prescribing

physician relied on any warnings or statements made by Lilly in deciding to prescribe

diethylstilbestrol to Ms. Kasparian's mother.

In further support of its motion, Lilly adopts and incorporates herein its accompanying

Memorandum of Points and Authorities (including Statement of Undisputed Facts), and the

Affidavit of Ericka Harper Snyder.

WHEREFORE, Lilly moves for the entry of summary judgment in its favor as to Counts

I through VI of the Complaint.

## **REQUEST FOR HEARING**

Pursuant to LCvR 7(f), Lilly requests a hearing on its Motion for Summary Judgment.

Respectfully submitted,

ELI LILLY AND COMPANY,

By its attorneys,

/s/ James J. Dillon
James J. Dillon, D.C. Bar # 485593
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

Dated:  January 25, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOY KASPARIAN and RICHARD
FEDERICO, JR.,

Plaintiffs

v.

ELI LILLY AND COMPANY, et al.,

Defendants.

CIVIL ACTION No.  06-CV-00290 (RMC)

**DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

I.     **Introduction**

Defendant Eli Lilly and Company ("Lilly") submits this Memorandum of Points and

Authorities in Support of Its Motion for Summary Judgment on all claims asserted by Joy

Kasparian ("Ms. Kasparian") and Richard Federico ("Mr. Federico") (collectively "Plaintiffs").

Each of the claims asserted - negligence, strict liability, breach of warranty, negligent

misrepresentation - rest in the end on the alleged inadequacy of Lilly's written product literature

and warnings.  Each claim asserts that those written materials were read and relied upon by the

prescribing doctor - the learned intermediary - and that the doctor would not have prescribed the

drug had better written materials been supplied.  The crux of the claims, then, is that the only

wrong alleged by Lilly is inadequate product literature leading to a prescription for

diethylstilbestrol.

Yet Plaintiffs cannot show that the prescribing doctor saw or relied on Lilly's product

literature.  The pharmaceutical at issue here had been on the market for more than twenty years

when it was prescribed in this case.  It was never patented, and literally hundreds of companies

sold the drug over that span. At least fifty companies sold it at the time of the prescription. So far as the record goes, that doctor might have prescribed the drug based on his own training and experience, on medical literature, on the standard of care in his community, or based on the product literature promulgated by one of the other companies that made the drug.

On the record, it is not plausible to assume that the doctor based the prescription decision on Lilly's product literature since at the time of the prescription, that Lilly literature did <u>not</u> indicate or suggest use of the drug for pregnancy, the purpose the physician here obviously pursued. Lilly's "indications" for diethylstilbestrol in its product literature were its fulfillment of the statutory requirement that manufacturers of prescription medications provide instructions for physicians on all prescription medications. While it is perfectly acceptable for a physician to prescribe a drug for an FDA-approved use, even if one or more of the companies making the drug did not indicate it for that use, in such cases the physician's decision cannot be based on the alleged inadequacy of the literature of one of these companies, Lilly, that did not suggest that use. Since the only wrong alleged against Lilly is a failure in that literature, Plaintiffs cannot show that the alleged failure was at all a cause of her harm.[1]

Further, while the Complaint also asserts generally that Lilly was negligent in "failure to warn, over-promotion of DES, and failure to heed and report adverse studies regarding the safety and efficacy of DES," those failures, if proved, still relate to Lilly's product literature. Any testing, warning, or report of studies would necessarily be contained in the product literature that is the crux of this claim.

---

[1] Ms. Kasparian alleges that a Lilly product was prescribed to her mother, and that as a result she sustained injuries. Lilly does not concede that a Lilly product was ever prescribed to or ingested by Plaintiff's mother but, in any event, the critical point for liability is whether the prescribing doctor relied on Lilly's warnings and literature in deciding whether to prescribe the generic drug diethylstilbestrol to Plaintiff's mother.

## II.    STATEMENT OF UNDISPUTED FACTS[2]

### A.    Background Facts

1.    In the Complaint, Plaintiffs allege that Lilly's failure to warn proximately and in fact caused the injuries for which they are now claiming damages.  Complaint ¶¶ 3-5 (Count I - Negligence), 6-13 (Count II - Strict Liability), 14-18 (Count III - Breach of Warranty), 19-23 (Count IV - Misrepresentation), 24 (Count V - Punitive Damages), 25-26 (Count VI - Loss of Consortium).  Complaint (copy attached as Exhibit 1 to Affidavit of Ericka Snyder ("Snyder Aff.").

2.    Plaintiff's mother, Elaine Kasparian ("Mrs. Kasparian") lived in Belmont, Massachusetts and treated with physician Herbert W. Horne, Jr., during her pregnancy with Ms. Kasparian.  Joy Kasparian's Answers to Eli Lilly and Company's First Set of Interrogatories ("Interrog.") Nos. 5-6 (attached as Exhibit 2 to Snyder Aff.).

3.    Plaintiff's mother gave birth to Ms. Kasparian on May 15, 1970 at the Boston Lying-In Hospital for Women in Boston, MA.  Interrog. Nos. 5, 6 (Snyder Aff., Ex. 1)

4.    While living in Massachusetts and while pregnant with Ms. Kasparian, Plaintiff's mother was allegedly prescribed diethylstilbestrol ("DES") by Dr. Horne due to prior miscarriages.  Interrog. No. 6 (Snyder Aff., Ex. 1);  Transcript of the Deposition of Elaine Kasparian ("Elaine Kasparian Dep.") at 57-59 (excerpts attached as Exhibit 3 to Snyder Aff.).

5.    Mrs. Kasparian claims to have taken diethylstilbestrol throughout her pregnancy with Ms. Kasparian, which would have been in approximately September 1969 - May 1970.  Elaine Kasparian Dep. at 59 (Snyder Aff., Ex. 3).

---

[2] Lilly accepts these facts as undisputed for purposes of this summary judgment motion only and reserves the right to contest any of these facts at trial.

6.      Dr. Horne, the physician who allegedly prescribed Mrs. Kasparian diethylstilbestrol while she was pregnant with Ms. Kasparian, is now deceased.  Elaine Kasparian Dep. at 53-54 (Snyder Aff., Ex. 3).

7.      Diethylstilbestrol was a prescription drug, available for use only by prescription from a licensed physician.

8.      In 1969-1970, the years that Ms. Kasparian's mother allegedly took DES, at least 60 companies manufactured DES.  *See American Druggist Blue Book* ("Blue Book"), 1969 and 1970 (excerpts attached as at Exhibit 4 to Snyder Aff.); *Drug Topics Red Book* ("Red Book"), 1969 and 1970 (excerpts attached as at Exhibit 5 to Snyder Aff.).

9.      DES was a generic drug, never patented, that was never proprietary to any company.  *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 188 (Ohio 1998) ("Because DES was not patented, some two hundred to three hundred drug companies produced DES in the years it was widely prescribed for use during pregnancy.")

10.     Federal Regulations now and in the years of Plaintiff's mother's pregnancy with her required *all* manufacturers of prescription medications to provide instructions and warnings for physicians on prescription medications that could only be obtained through the order of a licensed medical practitioner.  Federal Food, Drug and Cosmetic Act §§ 502, 503, 21 U.S.C. §§ 352(f), 353 (1938) (Snyder Aff. Ex. 6); Food and Drugs, 21 C.F.R. § 1.106 (1969) and Food and Drugs, 21 C.F.R. § 1.106 (1969 and 1970) (Snyder Aff. Ex. 7).

11.     Plaintiff has provided no medical records or prescription records demonstrating that Dr. Horne prescribed Lilly's diethylstilbestrol, as opposed to a generic prescription or a specific prescription for another drug company's brand of diethylstilbestrol to Plaintiff's mother during her pregnancy with Ms. Kasparian.

12.    Plaintiffs have provided no evidence demonstrating that Dr. Horne ever read or consulted Lilly's product warnings and literature in determining whether or not to prescribe a medication to Plaintiff's mother.

13.    At the time of Plaintiff's mother's pregnancy with Ms. Kasparian, from approximately September 1969 to May 1970, Lilly's product literature did not indicate or suggest use of the drug during pregnancy. *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971 (copies attached as Exhibit 8 to Snyder Aff.); 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference (copies attached as Exhibit 9 to Snyder Aff.).

## III.    ARGUMENT

### A.    SUMMARY JUDGMENT IS MANDATED FOR A DEFENDANT WHERE THERE IS NO EVIDENCE ON AN ELEMENT ESSENTIAL TO PLAINTIFFS' CLAIMS.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Carroll v. Xerox Corp.*, 294 F.3d 231, 236-37 (1st Cir. 2002). Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial. *Carroll*, 294 F.3d at 236. "Neither 'conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment. Rather, to withstand a properly supported motion for summary judgment, the opposing party must present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Id.* at 236-37 (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)) (citations omitted). Where the non-moving party bears the burden of proof, it may not defeat summary

judgment by relying upon mere allegations or evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Rather, the party must produce sufficient evidence to support a jury verdict. *Id.* at 248.

Plaintiff has the burden of proving a causal connection between an allegedly tortious act of a defendant and their claim of injury. In this case, Plaintiff alleges that warnings by Lilly for its diethylstilbestrol were inadequate and that these inadequate warnings were the cause of her injuries. Plaintiffs do not contend that Lilly's diethylstilbestrol itself was defective, but rather, but for Lilly's inadequate warnings, the prescribing doctor and learned intermediary, Dr. Horne, would not have prescribed diethylstilbestrol and the alleged harm would not have occurred. An essential element of each of these claims, then, is that Dr. Horne relied upon Lilly's warnings when he prescribed this drug. If Dr. Horne did not so rely, Lilly's warnings, adequate or inadequate, are simply beside the point of these claims.[3]

### 1.    The Substantive Law of Massachusetts Governs Plaintiffs' Claims.

Since all of the operative events related to the prescription and use of diethylstilbestrol occurred in this Commonwealth, Massachusetts substantive law applies to Plaintiffs' claims. *See Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834-35 (Mass. 1994). Ms. Kasparian's exposure to DES took place in Massachusetts, the place where she was born, where her mother lived when she was pregnant with her, and where her mother allegedly was prescribed DES and filled her prescriptions for DES. Interrog. Nos. 1, 5, 6, 7 (Snyder Aff., Ex. 1). Plaintiff has not alleged that the substantive law of any other jurisdiction applies.

### 2.    Because the Subject Matter of this Case is a Prescription Drug, the Learned Intermediary Rule Applies.

---

[3] Lilly does not concede that its product literature concerning diethylstilbestrol was in any way inadequate. However, for purposes of this summary judgment motion only, Lilly focuses on Plaintiffs' burden to show that any alleged inadequacy caused Plaintiffs' injuries.

In Massachusetts, a drug manufacturer's duty to warn runs to the prescribing physician and not to patient or ultimate consumer of the product. *See Garside v. Osco Drug, Inc, 976* F.2d 77, 80 (1st Cir. 1992) (applying Massachusetts law); *Knowlton v. Deseret Medical, Inc.,* 930 F.2d 116, 120 n.2 (1st Cir. 1991) ("It is generally accepted that in a case involving medical products prescribed or used by a physician or trained medical personnel, the warning runs to the physician not the patient."). The prescribing physician is the logical target of a warning concerning a prescription medication, because only the physician has the scientific acumen required to comprehend the risks and benefits associated with prescription drugs. *Id.* (stating that the physician is in the best position to convey warnings regarding medical products to patients). A physician therefore serves as a learned intermediary between a drug manufacturer and an ultimate patient or consumer. *See id.*

This case, arising from events allegedly occurring in 1969-70, predates any use of consumer-oriented package inserts, which were not required until at least 1976.[4] Estrogen Preparations, 41 Fed. Reg. 47,573, 47,576 (Oct. 29, 1976) (Snyder Aff., Ex. 11).

Plaintiffs in this case must be able to demonstrate that Lilly breached a duty by failing to adequately warn Dr. Horne of the risks associated with diethylstilbestrol and, because of that failure, Dr. Horne prescribed diethylstilbestrol. Without proving that Dr. Horne ever read, viewed or relied on Lilly's product warnings, and in light of circumstantial evidence that Dr. Horne did not so rely because he prescribed diethylstilbestrol for a use that Lilly did not indicate

---

[4] Drugs dispensed by prescription at this time had only limited mandated labeling requirements for the product as sold to consumers - essentially that the pharmacist attach a label with the patient's name, directions for use and cautionary statements, if any, contained in the prescription and dating and dispensing information. *See* Federal Food, Drug, and Cosmetic Act § 503(b)(2), 21 U.S.C. § 353(b)(2) (1938) (Snyder Aff. Ex. 6). Effective in 1961, the Food, Drug and Cosmetic Act was amended to require information for the licensed practitioner to be included with the package from which the drug is to be dispensed. *See* Enforcement of Regulations Drugs and Devices, New Drugs, 25 Fed. Reg. 6985 (July 22, 1960, Proposed Amendments to 21 CFR § 1.106(b)(3) and (4)) (Snyder Aff., Ex. 10). The "package inserts" now familiar to consumers came later, in 1976 (for estrogens). Estrogen Preparations, 41 Fed. Reg. 47,573, 47,576 (Oct. 29, 1976) (Snyder Aff., Ex. 11).

or recommend in its literature, Plaintiffs cannot prove that any alleged failure to warn by Lilly

caused the injuries that serve as the basis for this action.

> **3.    Plaintiffs' Claim for Negligent Failure to Warn Must Be Dismissed Because She Cannot Demonstrate That Lilly's Warnings Were Relied Upon By Dr. Horne.**

A cause of action for negligent failure to warn requires a plaintiff to prove that a

prescription drug manufacturer (1) owed a duty to warn users of potential dangers of a

medication, (2) breached that duty by not adequately warning of risks associated with that drug,

(3) where such breach in fact caused harm because of a failure to warn, (4) where such breach

proximately caused harm because of the failure to warn, and (5) that the failure to warn caused

damages. *See MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 70-72 (Mass. 1985)

(explaining elements of cause of action for negligent failure to warn). Again, in the context of

prescription drugs, a drug manufacturer's warning is directed at a prescribing physician, not the

patient. *See Osco Drug*, 976 F.2d at 80. Therefore Plaintiffs must prove that Lilly failed to warn

Dr. Horne of the risks associated with the product. *See id.*

Plaintiffs have not produced any evidence that any failure to warn by Lilly - even if such

failure existed - caused any harm in fact or proximately. An inadequate warning may be the

specific or proximate cause of harm only if the failure to warn led to a prescription that would

not otherwise have occurred. Plaintiffs cannot prove that Dr. Horne was even aware that Lilly's

warnings existed at the time he allegedly prescribed a Lilly product to Mrs. Kasparian. Indeed,

because Dr. Horne prescribed diethylstilbestrol notwithstanding that Lilly's product literature did

not indicate or recommend diethylstilbestrol for use during pregnancy. Without proof of Dr.

Horne's reliance, Ms. Kasparian cannot then claim that any deficiency in Lilly's warnings or

literature was the specific cause of her harm, proximately caused her harm, or that any additional

warnings by Lilly would have prevented her injuries.

For example, in *Motus v. Pfizer Inc.*, the Ninth Circuit upheld summary judgment for the defendant pharmaceutical manufacturer, finding that "[b]ecause the doctor testified that he did not read the warning label that accompanied Zoloft or rely on the information provided by Pfizer's detail men before prescribing the drug to Mr. Motus, the adequacy of Pfizer's warnings is irrelevant to the disposition of this case." 358 F.3d 659, 661 (9th Cir. 2004). Thus, *Motus* recognizes that it is unfair to assign liability to a pharmaceutical manufacturer for a doctor's decision to prescribe a drug based on his or her own expertise and knowledge, where there is no evidence that the doctor actually relied on information provided by the manufacturer.[5] This is especially true where, as here, Dr. Horne prescribed diethylstilbestrol for a use — pregnancy — that was not indicated or encouraged by Lilly.

### a. The "Heeding Presumption" Cannot Supply The Threshold Evidence Dr. Horne Read and Relied On Lilly's Warnings.

Plaintiffs in products liability cases can, once clear predicates are proved, gain the benefit of a rebuttable "heeding presumption" that an adequate warning would have been considered by the prescribing doctor, would have altered the doctor's prescription decision and, therefore, would have prevented the injury. The predicate condition for this presumption is that the <u>particular</u> <u>defendant</u> failed to warn the specified physician who wrote the prescription. This predicate proof establishes the nexus between the defendant's act - the warning - and the prescription that allegedly caused harm. This link is required because without it, a defendant with no connection to the events at issue might still be held liable - a sort of negligent "warning in the air" that was never consulted and that caused no harm.

---

[5] While California (unlike Massachusetts) has not adopted the "heeding presumption" described herein, *Motus* is indistinguishable from this case because the so called "heeding presumption" can logically apply only <u>after</u> plaintiff first proves that the allegedly inadequate warning was seen and relied upon by the prescribing doctor. Only <u>after</u> the warning is implicated in the case, in a causal way, can there be a predicate for the presumption that a different warning would have been heeded and injury prevented. *See infra.* III.A.3.a.

Under Massachusetts law, once a plaintiff establishes that a drug manufacturer failed to adequately warn a physician, the heeding presumption shifts the burden to the defendant to prove that any additional warning would not have prevented the plaintiff's injury. The heeding presumption fills in the gaps in the causal chain after a plaintiff proves that the defendant gave an inadequate warning to the doctor but may be unable to prove that an adequate warning to that doctor would have prevented a plaintiff's injury. *See Osco Drug,* 976 F.2d at 81 ("However ... where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug." (quoting *Seley v. G.D. Searle & Co.,* 423 N.E.2d 831, 838 (Ohio 1981)); *Knowlton,* 930 F.2d at 123 ("This [heeding] presumption, absent the production of rebutting evidence by the defendant, is sufficient to satisfy the first branch of plaintiff's proximate cause burden." (quoting *Seley,* 423 N.E.2d at 838)).

However, this presumption may be rebutted by evidence that the particular prescribing physician would not have changed her prescription decision even if the "adequate" warning had been given. *See Osco Drug,* 976 F.2d at 81. The specificity of this rebuttal evidence reinforces the point made here - to merit the benefits of the "heeding presumption" a plaintiff must show at least that the specific prescribing doctor received and relied upon an "inadequate warning." Rebuttal proof that this doctor would not have been influenced by a different warning from one company makes no sense if that doctor never saw or considered that company's warning in the first place.

In each of the cases cited above, there was no dispute as to whose warnings were involved. In *Osco Drug,* plaintiffs brought suit for injuries resulting from the ingestion of phenobarbital, manufactured by the McKesson Corporation. *See Osco Drug,* 976 F.2d at 78-79.

In analyzing plaintiffs' failure to warn claims, the Court's inquiry focused only on the adequacy of McKesson's warnings and whether the combination of certain other medications with phenobarbital - amoxicillin and erythromycin - could have caused the claimed injuries (severe burns). In *Knowlton*, plaintiffs sued Deseret Medical, the manufacturer of a catheter and needle that were used during plaintiff's open heart surgery. *See Knowlton*, 930 F.2d at 117. In discussing the inadequate warnings allegations, the Court focused exclusively on the sufficiency of Deseret's warnings regarding "the danger inherent in the use of the catheter and needle" and the propriety of the instructions accompanying those products. *See id.* at 118-19. There was no dispute concerning the source of the warnings and product literature that the plaintiffs alleged were inadequate and caused injury. Finally, in *G.D. Searle*, the Ohio case from which the heeding presumption was subsequently applied by Massachusetts courts in *Osco Drug* and *Knowlton*, the Court was charged with examining the adequacy of G.D. Searle's warnings regarding toxemia that accompanied its medication, Ovulen. *See G.D. Searle*, 423 N.E.2d at 836. As with *Osco Drug* and *Knowlton*, the Court in *G.D. Searle* took as a given that the warnings of the defendant were the specific warnings actually viewed by the learned intermediary, and therefore the decision concerned only the adequacy of that defendant's product literature. There was never any argument regarding the origin of the allegedly inadequate warnings, only the adequacy of those warnings.

In each of these heeding presumption cases, there was no dispute raised that the product warnings or literature originated from the defendants named in those cases. Since that company's warnings were implicated in the decision to prescribe or use, it was reasonable to invoke the "heeding presumption" that any alteration in *that specific company's* product literature would have reached that same prescribing doctor, been heeded, and prevented injury.

This presumption does not carry the same logical power with generic, unpatented products because there are many sources of warnings other than the single defendant here.

Indeed, diethylstilbestrol was a generic drug and was manufactured by literally scores of companies. *See McCormack v. Abbott Labs.*, 617 F. Supp. 1521, 1525 (D. Mass. 1985) ("DES was a fungible drug produced by as many as 300 drug companies from a chemically identical formula."); *Sutowski*, 696 N.E.2d at 188 ("Because DES was not patented, some two hundred to three hundred drug companies produced DES in the years it was widely prescribed for use during pregnancy."); *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 329 (Ill. 1990) (noting that "as many as 300 companies" manufactured DES at some point prior to 1971. For the year 1970 alone, the *American Druggist Blue Book* ("Blue Book") and *Drug Topics Red Book* ("Red Book") entries show that at least 50 companies manufactured DES. *See* 1969 and 1970 Blue Book (Snyder Aff., Ex 4); 1969 and 1970 Red Book (Snyder Aff., Ex. 5).

By statute and by Federal Food and Drug Administration regulations, *each* company of the companies that manufactured diethylstilbestrol was required to provide its own product literature, including warnings. Prescription medications that lacked such adequate warnings would be deemed misbranded drugs, and would subject manufacturers to liability. *See* Federal Food, Drug, and Cosmetic Act, §§ 502, 503, 21 U.S.C. §§ 352, 353 (1938) (Snyder Aff., Ex. 6); Food and Drugs, 21 C.F.R. § 1.106 (1969 and 1970) (Snyder Aff., Ex. 7).

Further, the use of DES was, by the time of the prescription here, long standing and well established. Over the quarter century from the first approval of the drug for use in pregnancy, many articles on the subject appeared in peer review journals, texts discussed its use, and standards of practice were established. Without proving that Lilly's warnings - as opposed to those of one of the many other sources where information about diethylstilbestrol was available -

were used by Dr. Horne, Plaintiff cannot show that (1) Lilly failed to adequately warn Dr. Horne, (2) that but for Lilly's warning, Dr. Horne would not have prescribed diethylstilbestrol, or (3) that any warning by Lilly - adequate or not - would have changed Dr. Horne's prescription practices.  Lilly's warnings are not the "but for" cause - the specific, proximate cause - for the injury here without proof that Lilly's warnings even factored into Dr. Horne's prescription and treatment decisions.

Plaintiff cannot present such proof because Lilly's product literature during the time of Plaintiff's mother's pregnancy did <u>not</u> indicate the use of diethylstilbestrol to prevent miscarriage and advised the physician to weigh the risks and benefits before using diethylstilbestrol in a known pregnancy.  *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971 (Snyder Aff., Ex. 8); 1969 and 1970 entries for Lilly's diethylstilbestrol in the Physician's Desk Reference (Snyder Aff., Ex. 9).  While the use of diethylstilbestrol in pregnancy was then approved by the FDA, Lilly was not suggesting its use in 1969-70.  While it would have been perfectly acceptable for Dr. Horne to write prescriptions for uses that are not listed on Lilly's product labeling, there is no basis to conclude that Dr. Horne looked at Lilly's literature and relied on it.  Indeed, circumstantial evidence suggests that Dr. Horne did not follow Lilly's literature during the relevant time period since he prescribed diethylstilbestrol for a use <u>not</u> set out by the product literature.

In light of this, it is speculation - not proof - to simply presume that Dr. Horne must have read Lilly's warnings.  This causal element is one that Plaintiff must prove, and this is a burden she has failed to meet.[6]

---

[6] In *Hibbs v. Abbott Lab.*, 814 P.2d 1186 (Wash. Ct. App. 1991), the Court of Appeals of Washington refused to grant summary judgment for lack of causation where the prescribing doctor relied on his own knowledge and not the drug company's literature in prescribing DES.  This case is distinguishable from that at hand because Massachusetts and Washington apply different standards in product liability actions.  Washington

**4.    Plaintiffs' Negligent Misrepresentation Claim Must Be Dismissed Because Plaintiffs Cannot Meet Their Burden of Proving That Dr. Horne Detrimentally Relied on Statements Specifically Made By Lilly**

To succeed on a claim of negligent misrepresentation against a manufacturer, a plaintiff bears the burden of proving that the defendant:  (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) *by their justifiable reliance upon the information,* and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information.  *Cummings v. HPG Int'l Inc.,* 244 F. 3d 16, 24 (1st Cir. 2001) (emphasis added) (applying Massachusetts law).

Just as in the claim of inadequate warning, Plaintiff's claim is based on alleged faults in Lilly's writings.  Those writings, directed to prescribing doctors, cannot have caused any harm unless the prescribing doctor saw and relied on them.  Plaintiff has produced no evidence that Dr. Horne ever saw, much less relied on, Lilly's product literature.  Because Plaintiff cannot prove that Dr. Horne read and detrimentally relied on warnings provided by Lilly, summary judgment is warranted in Lilly's favor on Plaintiff's claim for negligent misrepresentation.

**5.    Plaintiffs' Claims For Breach of Warranty Must Be Dismissed Because Plaintiffs Cannot Prove That Any Warranty By Lilly Was Read or Relied on By Dr. Horne.**

---

has adopted market share liability, allowing a plaintiff to hold liable any and every drug company that sold the drug in the relevant time period regardless of whether the specific defendant's drug caused the plaintiff's harm. *See Hibbs*, 814 P.2d at 1187 (citing *Martin v. Abbot Lab.*, 689 P.2d 368 (Wash. 1984)).  It follows that Washington, in a market share case, could not require proof that a manufacturer's warnings were read and relied upon as there is no requirement to prove that the defendant's product was involved in the case at all.  Instead, the market share standard for liability relaxes traditional causation principles that require a plaintiff to prove that the defendant was the cause in fact and the proximate cause of her injuries.  Unlike Washington, Massachusetts has not relaxed the causation standard in this fashion and has not adopted the market share theory of liability. *See Payton v. Abbott Labs.*, 437 N.E.2d 171, 188-190 (Mass. 1982) (finding plaintiff's theory of market share liability in a DES case did not satisfy the longstanding prerequisite in a negligence action of identifying the tortfeasor.  Identification serves two important purposes: "it separates wrongdoers from innocent actors, and also ensures that wrongdoers are held liable only for the harm that they have caused").

Plaintiffs allege that Lilly breached both implied and express warranties, although they do not make clear which implied warranties were breached. Although it is not entirely clear what claim is being alleged, it is irrelevant because Plaintiffs cannot prevail on claims of breach of express warranty, breach of the implied warranty of merchantability, or breach of the implied warranty of fitness for a particular purpose.

> **a.      Because There is No Evidence that Dr. Horne Relied Upon Any Express Warranties Made By Lilly, Plaintiff's Claim For Breach of Express Warranty Must Fail.**

Under Massachusetts law, "an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Mass. Gen. Laws c. 106 § 2-313. This requires that a plaintiff demonstrate that the targets of the express warranty knew that the warranty existed, read the warranty, and relied on its content. *See Sprague v. Upjohn*, Civ. A. No. 91-40035-NMG, 1995 WL 376934 at *3 (D. Mass. May 10, 1994) (citing *Roth v. Ray-Stel's Hair Stylists, Inc.*, 470 N.E.2d 137, 138 (Mass. App. Ct. 1984)). Therefore, there is no evidence that Dr. Horne knew of and relied on the statements that Plaintiffs allege constitute an express warranty, Plaintiffs' breach of express warranty claim must fail.

> **b.      Because Claims for Breach of Implied Warranty of Merchantability Are Analyzed In Massachusetts Coextensively With Negligent Failure to Warn Claims, Plaintiffs' Claim Cannot Succeed.**

In Massachusetts, liability for breach of an implied warranty of merchantability is "intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions." *Back v. Wickes*, 378 N.E.2d 964, 968-69 (Mass.

1978).[7]  However, Massachusetts law also mandates that a breach of warranty inquiry focused on

warnings accompanying prescription medications be analyzed in negligence.  In *Payton v. Abbott*

*Labs., et al.*, 437 N.E.2d 171 (Mass. 1982), the Supreme Judicial Court rejected the plaintiff's

theories of alternative and strict liability, noting that "[p]ublic policy favors the development and

marketing of new and more efficacious drugs.  The Restatement (Second) of Torts recognizes

this policy by rejecting strict liability in favor of negligence for drug related injuries." *Payton*,

437 N.E.2d at 89-90.  Claims of negligent failure to warn and a breach of an implied warranty of

merchantability are treated "as a single claim for failure to warn" purposes.  *See Sprague v.*

*Upjohn*, Civ. A. No. 91-40035-NMG, 1995 WL 376934 * 3 (D. Mass. May 10, 1994) (quoting

*MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 67-68 (Mass. 1985), *cert. denied*, 474 U.S.

920).  In *Hoffman v. Houghton Chemical Corporation*, 751 N.E.2d 848, 859 (Mass. 2001), the

Supreme Judicial Court stated, "[W]e implicitly recognized that negligent failure to warn and

failure to warn under breach of warranty are to be judged by the same standard…We expressly

recognize that convergence now." *Id.  (citing Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d

909 (Mass. 1998)).

As the Supreme Judicial Court explained, the Restatement (Third) of Torts: Products

Liability § 2(c) (1998) reaffirms this principle by concluding that a product "is defective because

of inadequate instructions or warnings when the foreseeable risks of harm posed by the product

could have been reduced or avoided by the provision of reasonable instructions or

warnings…and the omission of the instructions or warnings renders the product not reasonably

---

[7] It is unnecessary to discuss Plaintiff's strict liability claim because, in Massachusetts, breach of warranty law is a remedy "fully as comprehensive" as the strict liability theory of recovery that has been adopted by other jurisdictions.  *See Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 859-860 (Mass. 2001); *Back v. Wickes*, .378 N.E.2d 964, 968-69 (Mass. 1978).  Massachusetts employs breach of warranty theory "in nearly all respects" as equivalent to strict liability in the context of manufacturing and design defects.  Failure to warn claims based on breach of warranty, however, are analyzed through the negligence standard.  *See Correia v. Firestone Tire & Rubber Co.*, 446 N.E.2d 1033, 1039 (Mass. 1983).

safe." *Vassallo*, 696 N.E.2d at 923; *see also* Restatement (Third) of Torts: Products Liability § 2(c)(1998) §402A, comment m, at 34.

As discussed above, a claim of negligent failure to warn demands proof of reliance on "inadequate" warnings. Plaintiffs have not produced any evidence that Dr. Horne read and relied on Lilly's warnings while treating Ms. Kasparian's mother; instead, the circumstantial evidence is that he did not. Hence Plaintiffs cannot prove that any alleged deficiency in those warnings proximately caused their harm. Because breach of warranty of merchantability claims based on a failure to warn are analyzed coextensively with negligent failure to warn claims, Plaintiffs' claim for breach of the warranty of merchantability based on a failure to warn must be dismissed. *See* III.A.3, *supra*.

> **c.** **Because Plaintiff Cannot Prove Reliance By Dr. Horne On Lilly's Skill or Judgment in Treating Her Mother, Plaintiff Cannot Bring A Claim for Breach of Implied Warranty of Fitness for a Particular Purpose.**

If Plaintiff instead intended to assert a claim for breach of an implied warranty of fitness for a particular purpose because of inadequate warnings, that claim also must fail. Such a claim requires the consumer to prove that she relied on the manufacturer's knowledge, skill and judgment in purchasing a product tailored to that consumer's specifications, and that as a result of such reliance the consumer was injured. *See* Mass. Gen. Laws c. 106 s. 2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the *seller's skill or judgment to select or furnish* suitable goods, there is...an implied warranty that the goods shall be fit for such purpose.") (emphasis added); *see also Johnson v. Brown and Williamson Tobacco Corp.*, 122 F. Supp. 2d 194, 207 (D. Mass. 2000) ("Under M.G.L. c.106, § 2-315, the warranty of fitness for a particular purpose arises when 1) the seller had reason to know of the particular purpose for which the

buyer required the goods, 2) the seller had reason to know of the buyer's reliance on the seller's skill or judgment in selecting or furnishing suitable goods, and 3) the buyer relied in fact."). Here, however, such a warranty was never created by Lilly, as, again, there is no proof that Dr. Horne relied on *Lilly's* warnings, judgment or skill.

Lilly most certainly did make diethylstilbestrol that was accompanied by FDA approved warnings and instructions for use directed to physicians. There is no evidence whatsoever that Dr. Horne even read Lilly's product literature, and even if he had done so, Lilly's literature did not indicate or encourage using diethylstilbestrol during pregnancy or for the prevention of miscarriage. *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971 (Snyder Aff., Ex. 8); 1969 and 1970 entries for Lilly's diethylstilbestrol in the Physician's Desk Reference (Snyder Aff., Ex. 9). Failure to show that Dr. Horne relied on Lilly's skill, judgment or warnings results in a failure of proof on a claim for breach of warranty for a particular purpose.

6.     **Summary Judgment on Mr. Federico's Derivative Loss of Consortium Claim Is Mandated Because Ms. Kasparian Cannot Maintain Her Claims.**

Mr. Federico cannot prevail on his loss of consortium claims when Plaintiffs have not produced any evidence that Dr. Horne read or relied on Lilly's product literature before allegedly prescribing diethylstilbestrol to Mrs. Kasparian. Although Massachusetts recognizes loss of consortium as an independent tort, *Olsen v. Bell Labs., Inc.*, 388 Mass. 171, 176 (1983), such a claim cannot be maintained without proof of a tortious act that caused personal injury to the claimant's spouse. *Sena v. Massachusetts*, 417 Mass. 250, 264 (1994) ("Although we have determined that a claim for loss of consortium is independent of the spouse's cause of action, we have not repudiated the implicit prerequisite that the injured spouse have a viable claim") (internal citation omitted). *See also Brazinskos v. A.S. Fawcett, Inc.*, 318 Mass. 263, 267 (1945)

("The Plaintiff's husband could not recover for consequential damages if she had no cause of action") and *Pearl v. Wm. Filene's Sons Co.*, 317 Mass. 529, 532 (1945) (holding that a husband cannot recover for consequential damages arising from his wife's personal injury unless he proves that she had a good cause of action).[8]  Because Plaintiffs' claims of negligence, strict liability, breach of warranty and negligent misrepresentation must fail, so too must Mr. Federico's claim for loss of consortium.

### 7.    Massachusetts Does Not Award Punitive Damages.

Plaintiffs' claim for punitive damages must be dismissed.  In the absence of a statute expressly authorizing punitive damages, Massachusetts courts are not permitted to grant such an award.  *See City of Lowell v. Massachusetts Bonding & Ins. Co., et al.*, 47 N.E.2d 265, 272 (Mass. 1943) ("The damages awarded under such a rule are punitive.  In this Commonwealth exemplary damages are not allowed unless authorized by statute."); *see also Boott Mills v. Boston & Maine R.R.*, 106 N.E. 680, 683-84 (Mass. 1914); *Ellis v. Brockton Pub. Co.*, 84 N.E. 1018, 1020 (Mass. 1908).  No such statute exists that is applicable to this case, and therefore Plaintiffs are not entitled to punitive damages.

---

[8] In addition, under Massachusetts law a spouse cannot recover for loss of consortium unless the marital relationship existed at the time the tort was committed.  *Feliciano v. Rosemar Silver Co.*, 401 Mass. 141 (1987).  *See also Anderson v. Eli Lilly and Co.*, 588 N.E.2d 66 (N.Y. 1991).

**CONCLUSION**

For the foregoing reasons, Lilly respectfully requests this Court grant summary judgment

in Lilly's favor.  Lilly is entitled to judgment on all claims based upon allegedly inadequate

warning, and claims of misrepresentation or breach of warranty premised on such warnings, for

the reasons set out in this Memorandum.

<div style="margin-left:40%">

Respectfully submitted,

ELI LILLY AND COMPANY,

By its attorneys,

/s/ James J. Dillon
James J. Dillon, D.C. Bar # 485593
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

</div>

Dated:  January 25, 2007