UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
JOY KASPARIAN and                        )
RICHARD FEDERICO, JR.,                   )
                                         )
            Plaintiffs,                  )
                                         )
      v.                                 ) CIVIL ACTION No. 06-CV-00290 (RMC/AK)
                                         ) NEXT EVENT:
ELI LILLY AND COMPANY,                   )    Pretrial Conference September 19, 2007
                                         )
            Defendant.                   )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFFS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES
AND PRODUCTION OF DOCUMENTS**

   COME NOW PLAINTIFFS, by and through counsel, and move the court for an order compelling Defendant Eli Lilly and Company ("Defendant" or "Lilly") to answer Plaintiffs' First Set of Interrogatories and First Request for Production, and as grounds therefore states:

   1.   This is a products liability personal injury case arising from Plaintiff Joy Kasparian's *in utero* exposure to diethylstilbestrol ("DES") which has resulted in uterine malformations and causing her infertility.

   2.   Defendant includes in its defenses that Plaintiffs' action is barred by the statute of limitations and that Plaintiffs cannot prove that Joy Kasparian was exposed to Lilly's brand of DES.

   3.   The interrogatories and requests for production at issue in this motion are to investigate and reveal the extent of Defendant's complicity and close relationship with Dr. Herbert W. Horne, Jr. (the actual prescribing doctor in this case) and his daughter and research partner, Ms. Hannah Lord regarding Dr. Horne and Ms. Lord's practice, research and statements concerning DES.

4. Dr. Horne was Plaintiff Joy Kasparian's mother's treating physician during her pregnancy with Plaintiff Joy Kasparian. Dr. Horne prescribed DES for Elaine Kasparian during her pregnancy with Joy. It is alleged that the attached research and correspondence show that Lilly and Dr. Horne worked as a team to deny the Plaintiffs accurate information as to the risks and inefficacy of DES and the recognition of a cause of action.

5. On January 25, 2007, Defendant filed a Motion for Summary Judgment, citing as grounds therefore that Plaintiffs could not establish what warnings, if any, Dr. Horne read and relied on regarding DES.

6. Dr. Horne and his assistant Ms. Lord received financial assistance from Lilly after DES was taken off the market to conduct studies concluding that DES was safe and effective. See, e.g., Herbert W. Horne, Jr., "Evidence of Improved Pregnancy Outcome with Diethystilbestrol (DES) Treatment of Women with Previous Pregnancy Failures: A Retrospective Analysis," 38 J. Chronic Diseases 873, 880 (1985) (acknowledging both monetary and technical assistance by Eli Lilly and Company), as App. 1; see also Letter from Dr. Herbert Horne dated March 1, 1978, as App. 2 (acknowledging two grants from Eli Lilly and Company). While Plaintiffs have some information regarding Lilly's funding of Dr. Horne after 1978, Plaintiffs do not know when Lilly began its financial relationship with Dr. Horne. All that can be determined from the article is that data collection began in 1971, almost immediately after Plaintiff Joy Kasparian's birth. See "Improved Pregnancy Outcomes," pg. 876, App. 1.

7. As part of the research for the 1985 study, Dr. Horne sent out questionnaires to former patients he treated with DES, and those patients' children. See, e.g. App. 3. In its limited response to Plaintiffs' discovery, Defendant produced the survey responses provided to Dr. Horne by Plaintiff Joy Kasparian's mother but refuses to provide any other documentation or

information regarding the Horne/Lilly connection which the discovery seeks. Lilly has provided no reason why it has custody of the medical records.

8. Dr. Horne and Ms. Lord also sent numerous letters to the patients whom Dr. Horne had formerly treated with DES, and their children, stating that DES was unlikely to cause birth defects. These letters made reference to the 1985 study, as well as research still ongoing. See, e.g., Letter from Dr. Herbert Horne dated January 15, 1985, App. 4. These letters continued more or less annually for years, providing multiple alternative theories for the cause of DES-related conditions. See, e.g., Letter from Dr. Herbert Horne dated January 1993, App. 5. (blaming mycoplasmas, radon, and other environmental causes for cancer and infertility caused by DES). Lilly's support for Dr. Horne's research raises the inference that Dr. Horne and Ms. Lord's correspondence to Dr. Horne's former DES patients is or was part of a Lilly PR campaign, and Plaintiffs are entitled to this information to rebut Defendant's assertions of the statute of limitations, lack of identification, and the inapplicability of the heeding presumption.

9. Plaintiffs filed their First Set of Interrogatories and First Request for Production on June 27, 2006. Defendant responded on September 11, 2006 by referring entirely to general objections and by producing several pages of Dr. Horne's data gathered from Plaintiff Joy Kasparian's mother. See Defendant Eli Lilly's Objections, as App. 6. Also attached were what appear to be records of Elaine Kasparian's DES dosage regimen.

10. Defendant provided no specific reason as to why any particular request was objectionable; instead, Defendant only stated that 1) the study, which began after 1971, was not relevant to the case; 2) that the information is protected by attorney-client or work product privilege; and 3) that production would be unduly burdensome to Defendant. Id. For the reasons given below, none of these objections have merit.

11. Plaintiffs sent a good faith letter to Defendant to request further responses to all their discovery requests on September 15, 2006, attached as App. 7. Lilly immediately responded by demanding that Plaintiffs file a motion. See App. 8. After four months, Plaintiffs have been unable to reach any accord with Defendant as to these requests. Defendant is adamant in its refusal and belief that it has no duty to provide further information regarding its financial and technical assistance to Dr. Horne and Ms. Lord, and no compromise can be reached.

12. This Court granted assent to the present motion on January 19, 2007.

13. **DEFENDANT'S OBJECTION THAT THE DISCOVERY SOUGHT IS IRRELEVANT IS INCORRECT**

Discovery encompasses all information relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1); Doe v. District of Columbia, 231 F.R.D. 27, 30 (D.D.C. 2005). Here, Plaintiffs' seek discovery regarding the relationship between Eli Lilly and Company and the doctor who prescribed DES to Plaintiff Joy Kasparian's mother.

That Defendant believes that the evidence sought to be discovered cannot prove an inference or part of a claim does not mean that discovery regarding that inference or claim is irrelevant. See Chaplaincy of Full Gospel Churches v. Johnson, 217 F.R.D. 250, 256 (D.D.C. 2003). The standard for discovery is all evidence relevant to a claim or defense, not evidence dispositive of a claim or defense.

Chaplaincy stands for the proposition that even "anecdotal" information will satisfy discovery. Id. Plaintiffs may propound discovery on issues not directly related, but likely to provide relevant information, to the case at hand. O'Connor v. AM Gen. Corp., No. 85-6679, 1992 U.S. Dist. LEXIS 19681 at *8, *11 (E.D. Pa. Dec. 8, 1992) (allowing discovery of tests of automobile transmissions and specifications of braking systems other than the ones at issue in the case). The answers and documents sought, as will be discussed in detail below, are essential

to Plaintiffs' discovery as they are relevant to issues of the Statute of Limitations, product identification, and heeding.

    a)    <u>Heeding</u>

Plaintiffs' interrogatories are highly relevant to the issue of "heeding." Under the law applicable to this case, there is a presumption that, had Lilly warned Dr. Horne about the potential danger of DES, Dr. Horne would have heeded it. <u>See</u> <u>Harlow v. Chin</u>, 545 N.E.2d 602, 611 (Mass. 1989) (establishing that Massachusetts adopts the presumption that warnings will be heeded).

Defendant has placed in issue in its motion for summary judgment what Dr. Horne knew, and at what time. Some of the most relevant evidence to Dr. Horne's state of mind regarding Defendant's DES would be Dr. Horne's dealings with Defendant. First, if Dr. Horne's relationship with Lilly predated the birth of Plaintiff Joy Kasparian, that information would show that Dr. Horne was specifically aware of Lilly's DES product, and therefore its labeling.

Second, regardless of the date, the correspondence between Dr. Horne and Lilly is likely to have information showing what sources Dr. Horne considered regarding his use of DES and where he learned of those sources. Dr. Horne was involved in researching the safety and efficacy of DES and shared this information with Lilly. Dr. Horne and Lilly must have had some communication establishing his bona fides for the ability to conduct DES studies with Lilly's money. Those communications would be one of the best sources of information as to Dr. Horne's knowledge of DES.

Lilly's relationship with Dr. Horne is relevant to Plaintiffs' case, especially in light of Defendant's asserted defenses. Plaintiffs should not be denied this information.

b) <u>Identification</u>

The discovery sought by Plaintiffs is also relevant to the issue of identification. If Lilly and Dr. Horne worked together during Plaintiff Joy Kasparian's gestation or thereafter, then it is more likely than not Lilly's DES was the brand given to Joy Kasparian's mother. Plaintiffs have asked for "any agreement(s), contract(s), or proposals" between Lilly and Dr. Horne and Ms. Lord, not solely for data regarding the study. Defendant's refusal to provide any information regarding its relationship with Dr. Horne prior to Plaintiff Joy Kasparian's birth is unacceptable.

c) <u>Statute of Limitations</u>

The information sought by Plaintiffs is highly relevant to Defendant's assertion of the statute of limitations. Plaintiffs claim that their lawsuit was timely filed, but to the extent that Defendant asserts as a defense the statute of limitations, Plaintiffs would respond by reference to Defendant's relationship with Dr. Horne.

If Defendant Lilly had any agreements, contracts or proposals with Dr. Horne whereby Lilly would financially support him and his daughter in conducting their study and/or contacting Dr. Horne's former patients, then Plaintiffs would be justified in not bringing their cause of action on time. Dr. Horne's study claimed that DES was safe and effective, and he claimed that other research, both his and by other parties, supported his contention. Dr. Horne trumpeted the results of this study to every one of his patients he could find, and proposed alternative theories for every injury caused by DES. From the few documents provided by Defendant, it is clear that Plaintiff Joy Kasparian's mother was so contacted by Dr. Horne, read his material, responded, and refrained from filing suit due to the information therein.

If Dr. Horne's questionable study had not shown DES to be safe, Plaintiffs would have filed a claim sooner rather than later. Therefore, Plaintiffs' Interrogatories are highly relevant in

light of Defendant's defense that Plaintiffs' claims are barred by the applicable statute of limitations. By establishing the relationship between the Hornes' study and Lilly, Plaintiffs seek to demonstrate that, in reliance on the Hornes' study, they had no reason to think they should file a claim, and therefore her claim cannot be barred by the statute of limitations.

14. **DEFENDANT'S BOILER PLATE OBJECTIONS REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT MUST FAIL**

Defendant incorporates as part of its objection work product and attorney-client privileges. In <u>Dean v. A.H. Robbins Co.</u>, 101 F.R.D. 21 (D. Minn. 1983), the court demonstrated its frustration with boiler plate objections. The court stated:

> First, the defendant objects to this discovery as a 'direct assault' on the attorney client and work product privileges. This argument is, at best, premature. The court is scrupulously protecting these privileges at this stage of the proceedings. The sole endeavor at present is to identify and accumulate the specified documents and segregate them into privileged and nonprivileged categories.

101 F.R.D. at 24.

It is inconceivable that all the documents and all the information requested by Plaintiffs are protected by privilege. Defendant has made no attempt to provide a privilege log or justify in any way its withholding of these documents on grounds of privilege. If Defendant wishes to assert these privileges, Defendant must provide a privilege log itemizing all documents that Defendant asserts attorney-client or work product privilege for. <u>Doe v. District of Columbia</u>, 231 F.R.D. 27, 35 (D.D.C. 2005). Failure to provide such a log or other description allowing other parties to assess the applicability of the privilege constitutes a waiver of the privilege. <u>Lohrenz v. Donnelly</u>, 187 F.R.D. 1, 6-7 (D.D.C. 1999). Since, at this late stage, Defendant has not provided even a hint as to why the claimed privileges apply, the Court should deem these privileges waived.

For a document to be protected by the attorney-client privilege, the information must

have been confidential at the time of the communication, and the confidentiality must have been preserved since. General Elec. Co. v. Johnson, No. 00-2855, 2006 U.S. Dist. LEXIS 64907 at *44 (D.D.C. Sept. 12, 2006). It is the burden of the party asserting the privilege to demonstrate that confidentiality has been maintained. Id. In the absence of a privilege log, Plaintiffs can only speculate as to which of the documents requested were confidential communications with attorneys that have remained so.

Furthermore, Lilly can only claim work product privilege on the correspondence and study data asked for by Plaintiffs as the correspondence and study data was not communicated to an attorney for the purpose of legal advice. When the recipient of the communication is not a client, the attorney-client privilege does not apply. General Elec. Co. v. Johnson, 2006 U.S. Dist. LEXIS 64907 at *52.

For the work product privilege to apply, the test is whether the document can "fairly be said to have been prepared or obtained because of the prospect of litigation." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (citing Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 586 n. 42 [D.C. Cir. 1987]). Documents prepared for a purpose other than litigation are not covered by the work product privilege; furthermore, if a document was prepared for both a litigation and non-litigation purpose, it will be protected only if litigation was a substantial reason for its creation. General Elec. Co. v. Johnson, 2006 U.S. Dist. LEXIS 64907 at *34-35. The attorney preparing the document "must at least have had a subjective belief that litigation was a real possibility and that belief must have been objectively reasonable." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). Defendant has provided no evidence that litigation was a substantial reason, or even a reason considered, for the creation of any of the documents requested. There is also, without a privilege log, no information leading one to believe that an

attorney, much less one with a reasonable belief that litigation was possible, drafted any of the documents in question. The work product privilege must fail.

Even if Defendant's possession of these documents came about in preparation for litigation, these documents are fact materials that Plaintiffs have no easier method of acquiring. Therefore, Plaintiffs have demonstrated the "undue hardship" necessary to defeat the work product privilege. See Toledo Edison Co. v. G A Technologies, Inc., 847 F.2d 335, 339-40 (6th Cir. 1988).

15. **DEFENDANT FAILS TO DEMONSTRATE THAT A RESPONSE TO PLAINTIFFS' DISCOVERY WILL BE UNDULY BURDENSOME**

Defendant cites as part of its objection that the interrogatories are overly broad and unduly burdensome because they would require reviewing and producing records of Dr. Horne's study. However, Defendant provides no reason why this is the case.

Only an effort that would be "egregiously burdensome or oppressive" would justify limiting discovery. Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 297 (E.D. Pa. 1980). "In order to satisfy its burden, the objecting party must make a specific, detailed showing of how the interrogatory is burdensome." Alexander v. F.B.I., 192 F.R.D. 50, 53 (D.D.C. 2000). The specific objection must include affidavits or other evidence revealing the nature of the burden. Id. (holding that, when no evidence supplied, objections were waived and party must answer discovery request regarding each name on a list of a thousand names). Therefore, unless Defendant demonstrates, with evidence, that the burden would be unreasonable when weighed against Plaintiffs' need for the information, Defendant should be required to respond.

In Swain v. Encore Med. Corp., No. 03:04-174, 2006 U.S. Dist. LEXIS 76002 (W.D. Pa. Oct. 19, 2006), the defendants answered plaintiffs' interrogatories with three and one-half pages of general objections and specifically answered questions by stating that the interrogatory

9

was "vague, ambiguous, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence"; in short, the kind of answers Defendant provided in the present case. The court found that "[t]he general objections preceding their answers evince a complete indifference to the specificity requirement." Id. at *7. Such conduct was sanctionable. Id. at *10.

Defendant evidently has in its possession or control significant records from Dr. Horne's research, as evidenced by its ability to produce in thirty days the file specific to Plaintiff Joy Kasparian's mother. Defendant's ability to find such a file also demonstrates that Defendant's custodianship of these records is such that finding particular information is not burdensome. It does not appear that copying or perusing Dr. Horne's records is egregiously burdensome or oppressive to Defendant.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order compelling the Defendant to fully and adequately answer Plaintiffs' Interrogatories and Request for Production of Documents within thirty (30) days of said Order.

        Respectfully submitted,

        AARON M. LEVINE AND ASSOCIATES


          /s/ Aaron M. Levine
        Aaron M. Levine, #7864
        1320 Nineteenth Street, N.W., Suite 500
        Washington, D.C. 20036
        (202) 833-8040

        COUNSEL FOR PLAINTIFFS

## RULE 7.1(m) CERTIFICATION

Consent to the foregoing Motion to Compel was requested of and denied by counsel for Defendant Eli Lilly and Company.

                                                /s/ Aaron M. Levine
                                                Aaron M. Levine, #7864