UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
JOY KASPARIAN and                    )
RICHARD FEDERICO, JR.,               )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )    CIVIL ACTION No. 06-CV-00290 (RMC/AK)
                                     )    NEXT EVENT:
ELI LILLY AND COMPANY,               )      Pretrial Conference September 19, 2007
                                     )
                Defendant.           )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFFS' PRELIMINARY OPPOSITION TO DEFENDANT ELI LILLY AND
COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**COME NOW** Plaintiffs Joy Kasparian and Richard Federico, Jr. (collectively
"Plaintiffs"), through counsel, and preliminarily oppose Defendant Eli Lilly and Company's
("Lilly's") Motion for Summary Judgment.  As grounds therefore, Plaintiffs state that enough
evidence exists to allow a reasonable juror to find for Plaintiffs that a prescribing physician
would have heeded a warning about diethylstilbestrol ("DES") had one been given by Lilly, and
for such other and further reasons as set forth in Plaintiffs' memorandum and attached
appendices.

If for no other reason, Defendant's motion should be denied for its failure to comply with
Fed. R. Civ. P. 56(f); without the discovery sought by Plaintiffs and denied by Defendant, any
dispositive motion on the merits is not ripe.

Plaintiffs further move the court to stay consideration of this motion until the court has
ruled on their motion to compel simultaneously filed herein.

Respectfully submitted,

AARON M. LEVINE AND ASSOCIATES


     /s/ Aaron M. Levine

Aaron M. Levine, #7864
1320 Nineteenth Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

COUNSEL FOR PLAINTIFFS

UNITED STATES DISTRCIT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
JOY KASPARIAN and                          )
RICHARD FEDERICO, JR.,                     )
                                           )
            Plaintiffs,                     )
                                           )
      v.                                    )    CIVIL ACTION No. 06-CV-00290 (RMC/AK)
                                           )    NEXT EVENT:
ELI LILLY AND COMPANY,                     )        Pretrial Conference September 19, 2007
                                           )
            Defendant.                      )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO
<u>DEFENDANT ELI LILLY'S MOTION FOR SUMMARY JUDGMENT</u>**

TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II.    PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF BACKGROUND
       FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS ............................ 3

       A.    Plaintiffs' Responses to Defendant's Alleged Facts ............................... 3

       B.    Plaintiffs' Counter-Statement of Material Facts in Issue ...................... 5

III.   ARGUMENT ...................................................................................... 6

       A.    STANDARD ON SUMMARY JUDGMENT ....................................... 6

       B.    MASSACHUSETTS LAW, INCLUDING THE "LEARNED
             INTERMEDIARY" RULE, APPLIES TO THIS CASE ................... 8

       C.    DEFENDANT IS LIABLE FOR NEGLIGENT FAILURE TO WARN ............. 8

             1.   The Heeding Presumption Takes Effect Once a Warning Is Determined
                  Insufficient; It Is Defendant's Burden to Show That Dr. Horne Did Not Read
                  Its Warnings ......................................................................... 8

             2.   If Lilly Had Tested and Warned, DES Would Never Have Been Used In
                  Pregnant Women ...................................................................... 13

             3.   The Multiplicity of Manufacturers Does Not Make Any Difference to the
                  Heeding Presumption .............................................................. 14

             4.   Defendant's 1969 and 1970 Change in Its *Physicians' Desk Reference* Entry
                  for DES Does Not Eliminate the Fact That Defendant Failed to Adequately
                  Warn About DES ..................................................................... 16

       D.    PLAINTIFFS' CLAIMS OF BREACH OF WARRANTY ARE VIABLE ....... 17

       E.    RICHARD FEDERICO'S CLAIM IS VALID ................................ 17

       F.    PLAINTIFFS ABANDON THEIR CLAIM FOR PUNITIVE DAMAGES ....... 18

IV. CONCLUSION ........................................................................................... 19

## TABLE OF AUTHORITIES

CASES

1. <u>Baughn v. Eli Lilly and Co.</u>, 356 F. Supp. 2d 1177 (D. Kan. 2005) ................................ 8

2. <u>Brochu v. Ortho Pharmaceutical Corp.</u>, 642 F.2d 652 (1st Cir. 1981) ......................... 10

3. <u>Casale v. Eli Lilly and Co.</u>, C.A. 1:03-cv-11833-DPW (D. Mass. Mar. 23, 2004) .... 8, 12

4. <u>D'Amico v. Board of Medical Examiners</u>, 520 P.2d 10 (Cal. 1974) .............................. 7

5. <u>Dalke v. The Upjohn Co.</u>, 555 F.2d 245 (9th Cir. 1977) ............................................... 15

6. <u>Garside v. Osco Drug</u>, 976 F.2d 77 (1st Cir. 1992) ...................................................... 10

7. <u>Great Northern Ins. Co. v. Paino Assoc's</u>, 364 F. Supp. 2d 7 (D. Mass. 2005) ............... 7

8. <u>Hansch v. Eli Lilly and Co.</u>, No. 04-00122 (N.D. Cal. 2005) .......................................... 8

9. <u>Harlow v. Chin</u>, 545 N.E.2d 602 (Mass. 1989) ............................................................. 2

10. <u>Hibbs v. Abbott Lab's</u>, 814 P.2d 1186 (Wash Ct. App. 1991) ..................................... 11

11. <u>Knowlton v. Deseret Medical, Inc.</u>, 930 F.2d 116, 123 (1st Cir. 1991) ..................... 8, 10

12. <u>Linnen v. A.H. Robins Co.</u>, 11 Mass. L. Rep. 231, 1999 Mass. Super. LEXIS 552
    (Mass. Super. Ct. 1999) ............................................................................................... 10

13. <u>MacDonald v. Ortho Pharmaceutical Corp.</u>, 475 N.E.2d 65 (Mass. 1985) ..................... 9

14. <u>McCue v. Norwich Pharmacal Co.</u>, 453 F.2d 1033 (1st Cir. 1972) ............................... 10

15. <u>Medics Pharm. Corp. v. Newman</u>, 378 S.E.2d 487 (Ga. Ct. App. 1989) ...................... 16

16. <u>Miskulin v. Eli Lilly and Co.</u>, No. 418517 (Cal. Sup. Ct. Oct. 25, 2005) ....................... 8

17. <u>Motus v. Pfizer</u>, 196 F. Supp. 2d 984 (C.D. Cal. 2001) .................................................. 12

18. <u>Motus v. Pfizer</u>, 358 F.3d 659 (9th Cir. 2004) .............................................................. 12

19. <u>Payton v. Abbott Lab's</u>, 83 F.R.D. 382 (D. Mass. 1979) ............................................... 18

20. <u>Seley v. G.D. Searle & Co.</u>, 423 N.E.2d 831 (Ohio 1981) ........................................... 10

21. <u>Shields v. Eli Lilly and Co.</u>, 895 F.2d 1463 (D.C. Cir. 1990) ..................................... 6, 7

22. <u>Sterling Drug, Inc. v. Cornish</u>, 370 F.2d 82 (8th Cir. 1966) ........................................ 10

23. <u>Sterling Drug, Inc., v. Yarrow</u>, 408 F.2d 978 (8th Cir. 1969) ....................................... 10

24. <u>Wolfe v. Ford Motor Co.</u>, 376 N.E.2d 143 (Mass. 1978) ................................................ 9

## OTHER AUTHORITIES

R. Apfel and S. Fischer, <u>To Do No Harm, DES and the Dilemmas of Modern Medicine</u> (Yale University Press 1984)

<u>CDC Resource Focuses on DES Exposure</u>, 289 J. Amer. Med. Assn. 1624 (2003)

DES: The Complete Story, Orenberg, St. Martin Press 1981, The Greatest Experiment Ever Performed On Women, Seaman, Hyperion Press, (2003); Daughters At Risk: A Personal DES Story, Doubleday (1981))

W.J. Dieckmann, M.D., et al., Does the Administration of Diethylstilbestrol During Pregnancy Have Therapeutic Value?, 66 Amer. J. of Ob. and Gyn. 1062, 1074 (1953)

Robert K. Enders, "Mink Production in Relation to Stilbestrol," 16:7 The Fur Journal 4, 10 (1950)

R.R. Greene et. al., "Experimental Intersexuality: The Paradoxical Effects of Estrogens on the Sexual Development of the Female Rat," in The Anatomical Record (Edward A. Boyden, ed. 1939)

Hearing before the House Committee on Interstate and Foreign Commerce, 86th Cong., Second Session (1960)

Hearing Before the Subcommittee on Government Operations 92nd Congress Nov 11, 1971

Aaron Levine, Identification of Manufacturer of DES, 46 Proof of Facts 108 (1986)

National Institutes of Health, Were You Born Between 1938 and 1971 Or Pregnant Then?  If So, You Could Be Exposed to DES (January 1995)

Cynthia Orenberg, DES: The Complete Story (St. Martin's Press 1981)

The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (Henrietta Bull ed., Medical Economics, Inc. 8th ed. 1954)

The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (Henrietta Bull ed., Medical Economics, Inc. 13th ed. 1959)

The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (Henrietta Bull and Barbara Huff, eds., Medical Economics, Inc. 18th ed. 1964)

The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (Henrietta Bull and Barbara Huff, eds., Medical Economics, Inc. 23rd ed. 1969)

Restatement (Second) of Torts, §402A

## I. INTRODUCTION

Diethylstilbestrol ("DES"), a mid-20th century fertility nostrum, has been banned by the Food and Drug Administration, recalled by the manufacturers and branded a carcinogen and teratogen by the World Health Organization, the National Institutes of Health (NIH), the American College of Obstetrics and Gynecology, and every health organization devoted to reproductive medicine.  It should never have been prescribed to pregnant women.  See App. 1. Even Defendant Eli Lilly and Company ("Eli Lilly" or "Lilly") admits it was a mistake.  See CDC Resource Focuses on DES Exposure, 289 J. Amer. Med. Assn. 1624 (2003) at App. 2; See also DES: The Complete Story, Orenberg, St. Martin Press 1981, The Greatest Experiment Ever Performed On Women, Seaman, Hyperion Press, (2003); Daughters At Risk: A Personal DES Story, Doubleday (1981)).

The drug was prescribed continuously for twenty years to millions of pregnant women as a universal remedy to produce plump and healthy babies even though it never worked.[1]  See W.J. Dieckmann, M.D., et al., Does the Administration of Diethylstilbestrol During Pregnancy Have Therapeutic Value?, 66 Amer. J. of Ob. and Gyn. 1062, 1074 (1953) attached at App. 3.  Lilly failed to conduct a single test to investigate the DES effect on the forming female daughter even though it knew since the 1940s of reports in the literature that estrogen and DES in high doses stunted the reproductive organs of the exposed daughter in animals.  See Robert K. Enders, Mink Production in Relation to Stilbestrol, 16:7 The Fur Journal 4, 10 (1950) App. 4.

Had Lilly performed the most rudimentary of testing on DES in humans or animals prior to marketing DES for use in pregnancy it would have discovered that the drug caused

---

[1] In 1968 the National Academy of Sciences in its review of the effectiveness of DES for the purpose of preventing threatened or habitual abortion found that effectiveness cannot be demonstrated by the literature or its own experience.  See Hearing Before the Subcommittee on Government Operations 92nd Congress Nov 11, 1971, P. 77. At this time Lilly was asked by the F.D.A. to provide evidence that DES was effective and failed to provide any such information.

malformation, cancer, sterility and a plethora of reproductive tract malformations to the exposed daughter. See R. Apfel and S. Fischer, To Do No Harm, DES and the Dilemmas of Modern Medicine (Yale University Press 1984); C. Orenberg, Des: The Complete Story, (St. Martin's Press 1981); and Aaron Levine, Identification of Manufacturer of DES, 46 Proof of Facts 108 (1986). From their interrogatory answers, Lilly has demonstrated that it conducted no tests. See Defendant Eli Lilly and Company's Responses to Plaintiff's First Set of Interrogatories, attached as App. 5.

Plaintiffs have identified Lilly as the manufacturer of the DES Plaintiff Joy Kasparian was exposed to, and Lilly does not contest this identification on summary judgment. As such, Plaintiffs are entitled to the inference that the Lilly product was dispensed to Plaintiff Joy Kasparian's mother. All of Lilly's arguments regarding the multiplicity of DES manufacturers should be ignored.

Under Massachusetts law, Plaintiffs are entitled to proceed under a claim of negligence, namely failure to warn, breach of warranty, and negligent misrepresentation. At summary judgment, Plaintiffs are entitled to favorable inferences that 1) Lilly failed to adequately test DES for safety or efficacy, 2) DES was a teratogen and a defective or unreasonably dangerous drug, 3) Lilly failed to warn of any risks of injury to the exposed daughter, and 4) that Lilly went to the market ignoring and suppressing information about such risks and injuries. For the purpose of this motion, Lilly must concede that the warning attached as Exhibit 5 to the Statement of Julius Piver, M.D., App. 6, should have accompanied its DES.

Courts in Massachusetts have recognized the validity of the heeding presumption – that a warning, if given, will be heeded. Harlow v. Chin, 545 N.E.2d 602, 611 (Mass. 1989) (establishing that Massachusetts adopts the presumption that warnings will be heeded). Having

conceded inadequate warnings for the purpose of this motion, Defendant must now provide evidence to rebut the heeding presumption. Defendant has not done so.

The Defendant promoted DES for use by pregnant women, knowing it would affect the uterus of both mother and daughter. Lilly also knew the exposed daughter's reproductive injuries would not be put to the test or otherwise discovered for thirty-plus years. During that time, records have been lost or destroyed and doctors have passed away, including the prescribing physician in this case. This is not the fault of Plaintiffs but the fault of Defendant Lilly in placing an untested bomb on the market with a forty-year fuse. Nonetheless, Plaintiffs have, after scouring for state-of-the-art reports, standard of care experts, and other witnesses, gathered sufficient evidence to warrant their day in court.

Lilly claims that in 1969 and 1970 it did not recommend the drug in pregnancy. This is not true, but even more important is that from 1950 to 1968 Lilly did promote DES. Even if Lilly withdrew its indication in 1969, it did nothing to negate the impression it had created in doctor's minds during the previous decades.

## II.   PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF BACKGROUND FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS

### A.   Plaintiffs' Responses to Defendant's Alleged Facts

1-7.   Admitted.

8.   Denied.  Most companies listed in the Red and Blue Book were not national manufacturers or distributors as Defendant implies. Most were generic, local repackagers and bottlers. The great majority of the listings consist of local rebottlers who sold locally and regionally in limited areas of the United States. See Affidavit of Harold Sparr, R. Ph., attached as App. 7, ¶9-11. The Red Book and Blue Book are technical, international catalogues and are not accurate representations of what drugs were available in a particular market. Id. While

Defendant claims that there were fifty brands of DES, there were only six to eight national companies; the representation that there was a multiplicity of DES manufacturers is simply false. In addition, all of the DES manufacturers followed uniform labeling and warnings as promulgated by Defendant Eli Lilly.  <u>See</u> Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb), dated May 13, 1941, App. 8.  Furthermore, according to a pharmacist at the pharmacy that supplied Joy Kasparian's mother with DES, the Red Book and Blue book were never consulted in the pharmacy's purchase of DES.  <u>See</u> Deposition of Edward Lynch, pgs. 61-62, App. 9.

9.    Denied as misleading.  As stated above, DES was manufactured by only a few companies, and rebottled by many others.  Furthermore, Eli Lilly and Company held a dominant share of the Massachusetts DES market.  <u>See</u> Report of Harold Sparr, R. Ph., attached as App. 10.  Nationally, Lilly stated to Congress in 1960 that it manufactured 75% of all DES sold in the United States.  <u>See</u> <u>Hearing before the House Committee on Interstate and Foreign Commerce</u>, 86th Cong., Second Session (1960) (testimony of Thomas Carney, Vice President for Eli Lilly and Company), pg. 283,  App. 11.

10.    Admitted.

11.    Denied as incomplete.  While Plaintiffs have no records where Dr. Herbert W. Horne, Jr. specifically prescribes Lilly's DES, by 1971 Dr. Horne was engaged in a study of DES's efficacy and safety with the support of Defendant.  <u>See</u> Herbert W. Horne, Jr., M.D., <u>Evidence of Improved Pregnancy Outcome with Diethylstilbestrol (DES) Treatment of Women With Previous Pregnancy Failures: A Retrospective Analysis</u>, 38 J. Chronic Diseases 873, 874, 880 (1985), App. 12.  There is therefore evidence that Dr. Horne knew of Lilly's DES product in particular.

12.    Denied.  Plaintiffs' expert Dr. Julius Piver will testify to the practice of medicine in the years 1969-1970, where he will state that the general practice of doctors was to rely on Lilly's materials regarding DES.  See Piver Affidavit, ¶ 7-9, App. 6.

13.    Denied as incomplete.  Defendant recommended and promoted DES for two decades for use in preventing miscarriage, see 1954 The Physicians' Desk Reference ("PDR"), page 467, App. 13; 1959 PDR, page 699, App. 14; 1964 PDR, page 693, App. 15, and never explicitly warned of any particular risk to pregnant women or their daughters.  Defendant is not entitled to argue that it did not hold its product out as a preventative in miscarriage after promoting it as such for twenty years.

B.    Plaintiffs' Counter-Statement of Material Facts in Issue

14.    Diethylstilbestrol was an ineffective, teratogenic, and carcinogenic.  A reasonable and prudent drug manufacturer such as Eli Lilly and Company would have known and warned of its dangers and taken it off the market by 1953.  The warning attached as Exhibit 5 to Dr. Piver's Affidavit at App. 6 should have been given to the medical community.  See Falk Statement, ¶2, ¶3, and ¶6, App. 16.

15.    Dr. Julius Piver will testify that Eli Lilly should have issued warnings regarding the dangers of DES for pregnancy use, and that had Lilly issued a warning, it would have been a departure from the standard of care for an obstetrician to prescribe DES for a pregnant woman. See Piver Affidavit, ¶9-10 and ¶14, App. 6.

16.    DES labeling was industry-wide.  Lilly's New Drug Application with the FDA for DES was adopted at their request by the entire industry.  DES manufacturers formed a Committee led by Lilly's submission for the approval of DES use in pregnant women.  See Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb), dated May 13, 1941, App. 8.  Lilly never

warned of the DES risk of malformation to the offspring even though there were reports in the literature.  <u>See</u> R.R. Greene et. al., "Experimental Intersexuality: The Paradoxical Effects of Estrogens on the Sexual Development of the Female Rat," in <u>The Anatomical Record</u> (Edward A. Boyden, ed. 1939), as App. 17.

17.     Lilly was the *only* company listing for DES in the 1969 <u>PDR</u> index.  <u>See</u> 1969 <u>PDR</u>, pg. 224, App. 18.  All the other companies listed only have brand name products.  No company other than Lilly was listed in the <u>PDR</u> as selling or recommending DES.

18.     DES is a banned drug; it never would have received approval from the Food and Drug Administration if proper testing and warning had been done.  <u>See</u> Falk Statement, ¶ 11, App. 16.

19.     The pharmacy that sold DES to Elaine Kasparian, Plaintiff Joy Kasparian's mother, only stocked Eli Lilly's brand of DES.  <u>See</u> Lynch Deposition pg. 8, 10, App. 9.

III.     ARGUMENT

A.     STANDARD ON SUMMARY JUDGMENT

The Court must view the law and the facts in a light most favorable to the Plaintiff.  If the evidence presented raises more than the "slightest doubt," is more than "utterly implausible," presents more than a "mere scintilla" or contains more than a "metaphysical doubt," the nonmovant is entitled to go to trial.  <u>See</u> Edward J. Brunet, et al., <u>Summary Judgment Federal Law and Practice</u> 97-122 (2d ed. 2000).  In order to prevail, Lilly must present to the court facts that preclude the possibility that a reasonable juror could find in favor of the plaintiff.  The DES case of <u>Shields v. Eli Lilly and Co.</u>, which centered on the sufficiency of proof in opposing summary judgment, sets the bar:

> In a world short of absolutes, the jury is called upon to process less than perfect evidence.  Litigants may not offer speculations or

> slight possibilities in support of their claims; but neither are they limited to offering only the incontrovertible.  The jury's function contemplates that evidence may be less than indubitable . . . .  Every conceivable alternative theory of causation need not be extirpated by a litigant seeking the jury's decision.

Shields v. Eli Lilly and Co., 895 F.2d 1463, 1467 (D.C. Cir. 1990).  Similarly:

> Summary judgment should be granted only when the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine issue of material fact exists . . . .  Facts are 'material' if they possess 'the capacity to sway the outcome of litigation under the applicable law.'

Great Northern Ins. Co. v. Paino Assoc's, 364 F. Supp. 2d 7 (D. Mass. 2005).

> In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.

D'Amico v. Board of Medical Examiners, 520 P.2d 10 (Cal. 1974).

> The "significantly probative" test does not require the nonmoving party to discredit every conceivable alternative theory of causation.  As this court noted in Elliott v. Michael James, Inc., 165 U.S. App. D.C. 356, 507 F.2d 1179 (D.C. Cir. 1974), "there is no requirement that the circumstances, to justify the inferences sought, negative every other positive or possible conclusion."  To be significantly probative, evidence need only be sufficient to permit a reasonable juror, indulging all possible inferences, to find that the party proved the element at issue.

Shields, 895 F.2d at 1465.

Plaintiffs are entitled to every favorable inference.  They are entitled to knit together the various pieces of evidence to construct a web of information and evidence.

> It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence.  Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable.  Thus, the common object that the inference for which the fact is offered 'does not necessarily follow' is untenable.  It poses a standard of

7

> conclusiveness that very few single items of circumstantial
> evidence could ever meet.  A brick is not a wall.

Edward W. Cleary, et al., <u>McCormick on Evidence</u> § 185, at 542-43 (3d ed. 1984).

At this stage of the proceedings, negligence in failure to warn, proof of exposure, proof of product identification, and proof that DES is a defective and dangerous drug are presumed.

### B.    MASSACHUSETTS LAW, INCLUDING THE "LEARNED INTERMEDIARY" RULE, APPLIES TO THIS CASE

Plaintiffs do not dispute that Massachusetts law, including the "learned intermediary" rule, apply to this case.  However, as illustrated <u>infra</u> part C, Defendant misstates Massachusetts law regarding the heeding presumption.

### C.    DEFENDANT IS LIABLE FOR NEGLIGENT FAILURE TO WARN

1.    <u>The Heeding Presumption Takes Effect Once a Warning Is Determined Insufficient; It Is Defendant's Burden to Show That Dr. Horne Did Not Read Its Warnings</u>

> Comment j to Section 402 A (Restatement of Torts 2d 353)
> establishes a presumption that an adequate warning, if given, will
> be read and heeded.  In such a situation, the presumption
> established works to the benefit of the manufacturer.  However,
> where no warning is given, or where an inadequate warning is
> given, a rebuttable presumption arises, beneficial to the plaintiff,
> that the failure to adequately warn was a proximate cause of
> plaintiff's ingestion of the drug.  This presumption, absent the
> production of rebutting evidence by the defendant, is sufficient to
> satisfy the first branch of the plaintiff's proximate cause burden.

<u>Knowlton v. Deseret Medical, Inc.</u>, 930 F.2d 116, 123 (1st Cir. 1991) (applying Massachusetts law).

Lilly argues that Plaintiffs must prove that  Dr. Horne read and relied on Lilly's literature in order to prove causation.  If Plaintiffs cannot expressly show such a link, Defendant argues, it is entitled to summary judgment.  Lilly has lost summary judgment time and time again on its argument that Plaintiff cannot prove a deceased physician read its literature.  <u>See</u> Minute Order

in Casale v. Eli Lilly and Co., C.A. 1:03-cv-11833-DPW (D. Mass. Mar. 23, 2004), as App. 19; Miskulin v. Eli Lilly and Co., No. 418517 (Cal. Sup. Ct. Oct. 25, 2005), as App. 20; Hansch v. Eli Lilly and Co., No. 04-00122 (N.D. Cal. 2005), as App. 21; and Baughn v. Eli Lilly and Co., 356 F. Supp. 2d 1177 (D. Kan. 2005). Defendant continues to lose this argument because it is in direct contradiction with the "heeding presumption" recognized by Massachusetts. See Wolfe v. Ford Motor Co., 376 N.E.2d 143, 147 (Mass. 1978). Plaintiffs are entitled to a presumption that Dr. Horne complied with the standard of care and kept up with the literature, such as Lilly's labeling, Lilly's promotional materials, the PDR, or "Dear Doctor" letters. See Falk Statement, App. 16; Piver Affidavit, App. 6.

There is no evidence that the prescribing physician would have deviated from the applicable standard of care and ignored official labeling or proper warnings. Defendant therefore asks the court to find that Dr. Horne would have departed from the standard of care by: 1) prescribing DES even without promotion by Lilly, a major drug company; or 2) ignored published warnings; 3) intentionally refused to advise Plaintiff Joy Kasparian's mother of published risks, and 4) that Dr. Horne, developed, manufactured, promoted, tested, distributed and prescribed DES without any reliance on any existing manufacturer. Lilly provides no substantiation, by way of affidavit or deposition, to support any of these assertions.

It is generally accepted under Massachusetts law that, in prescription drug cases, warnings must be given to the prescribing physician as the "learned intermediary." MacDonald v. Ortho Pharmaceutical Corp., 475 N.E.2d 65, 69 (Mass. 1985). Pursuant to the Restatement (Second) of Torts § 402A, comment j, a presumption arises that, when provided with a warning, a physician would read and heed the warning given. Restatement § 402A has been adopted by Massachusetts. See Wolfe v. Ford Motor Co., 376 N.E.2d at 147.

As Defendant is only contesting the applicability of the heeding presumption in its motion for summary judgment and not the adequacy of its warnings, for the purpose of summary judgment the Court must assume that Defendant's warnings regarding DES were inadequate. It becomes Defendant's responsibility to affirmatively demonstrate that the prescribing physician would have disregarded a product warning. See Garside v. Osco Drug, 976 F.2d 77, 81 (1st Cir. 1992) (finding that a physician's statement that he never warned his patients of the risks of drugs sufficient to rebut the heeding presumption).

For summary judgment or judgment as a matter of law, the evidence must be so overwhelming that a jury cannot find that the doctor would have changed his behavior. See Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 120 (1st Cir. 1991) (finding that, where a surgeon opined that he would continue to use catheters in a manner that caused damage, a manufacturer could still be held liable because a jury could reasonably have found that the surgeon, if a warning had been given, would not have used a catheter in that manner); Cf. Seley v. G.D. Searle & Co., 423 N.E.2d 831, 838 (Ohio 1981) (finding that defendants provided sufficient evidence to rebut the heeding presumption where the demonstrated that plaintiff had not disclosed her condition to physician so he could not warn her of the dangers of taking the drug in her condition). Even if a doctor could be considered an intervening cause, when a pharmaceutical manufacturer's failure to warn contributes to the doctor's negligent prescription, the manufacturer remains liable. See Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652, 660 (1st Cir. 1981); McCue v. Norwich Pharmacal Co., 453 F.2d 1033, 1035 (1st Cir. 1972); Sterling Drug, Inc., v. Yarrow, 408 F.2d 978, 994 (8th Cir. 1969) ("The trial court properly concluded that any failure of the appellee's physician to learn of warnings from sources other than appellant

did not relieve appellant of liability"); <u>Sterling Drug, Inc. v. Cornish</u>, 370 F.2d 82, 85 (8th Cir. 1966).

Massachusetts law allows the heeding presumption to remain even when the source of a doctor's information is tenuously connected to the drug company.  In <u>Linnen v. A.H. Robins Co.</u>, 11 Mass. L. Rep. 231, 1999 Mass. Super. LEXIS 552 (Mass. Super. Ct. 1999), a doctor ignored the <u>PDR</u> entry and the package insert for a drug and relied only on the statements of other professionals.  <u>Id.</u> at *3-*4.  The Massachusetts Superior Court held that, even though there was no evidence in the record of where the professionals got their information or what they might have said if the drug company had provided adequate information, whether or not they would do so "is a question for the jury."  <u>Id.</u> at *12-*13.  Similarly, unless Defendant can show that Dr. Horne would not have heeded a warning, the presumption remains in effect.

<u>Hibbs v. Abbott Lab's</u>, 814 P.2d 1186 (Wash Ct. App. 1991) is the only reported appellate decision that addresses the heeding presumption as it pertains to DES injuries.  In <u>Hibbs</u>, the prescribing obstetrician testified that he prescribed DES based on his own observations and did not rely on any drug manufacturer's product literature.  <u>Id.</u> at 1187.  Therefore, the defendants argued that any failure to warn on their part was irrelevant.  <u>Id.</u> at 1188.

Even after the doctor's testimony, the <u>Hibbs</u> Court rejected the drug company's arguments and reversed summary judgment for the defendant drug manufacturer.  The Court held:

> Here, Dr. Rutherford's testimony was only that he did not rely on Kirkman or any other pharmaceutical company's promotions literature.  He prescribed DES because of what he knew about the drug from his own vast experience and other doctors' work.  Based on these statements, Kirkman would have us conclude that if the drug companies had researched DES, as Drs. Lynch and Stillman

> claim they should have, and warned about not only the drug's lack
> of efficacy in the prevention of spontaneous abortions, but also the
> drug's significant dangers when ingested during pregnancy, Dr.
> Rutherford would have nevertheless ignored those warnings.
>
> Kirkman's argument is flawed. Dr. Rutherford's reliance on his
> own knowledge of DES in deciding to prescribe the drug to
> Bernadine Raymond has no bearing on whether he would have
> heeded warnings, had any been given, that the drug posed serious
> risks to the unborn children of pregnant women. Dr. Rutherford
> was simply never asked this question.

Id.

In a DES case out of Boston, Casale v. Eli Lilly and Co., C.A. 1:03-cv-11833-DPW (D. Mass. Mar. 23, 2004), Lilly filed a motion for summary judgment on the issue of heeding. The District Court in that case made a preliminary ruling, prior to settlement, stating: "Court considers the case a failure to warn case and takes the summary judgment issues under advisement but has indicated an inclination to deny the motion." See Selected Pages from Defendant's Memorandum and Minute Order, App. 19.

Defendant's citation to Motus v. Pfizer, 358 F.3d 659 (9th Cir. 2004), is not applicable to this case. Motus is a case about California law, not about the heeding presumption in general. Furthermore, the Ninth Circuit's ruling is not a statement that mere lack of reading a warning is enough to rebut the heeding presumption. The Ninth Circuit's decision in Motus is based on a lower court record where the patient's prescribing physician affirmatively admitted at deposition that he did not and would not read or rely on any of the materials regarding Zoloft provided by the manufacturer, nor did he read the PDR entry for Zoloft. Motus v. Pfizer, 196 F. Supp. 2d 984, 996 (C.D. Cal. 2001). The prescribing physician also testified that he knew of the research linking drugs such as Zoloft to suicide, but discounted it. 196 F. Supp. 2d at 998. The doctor in Motus took off on his own. There is no evidence of any such deviation in this case.

Dr. Horne is deceased, but Plaintiffs' experts will testify that the standard of care was to read Lilly's warnings and that Dr. Horne had a relationship with Lilly. Plaintiffs are entitled to the presumption that Dr. Horne would have heeded an adequate warning had Lilly given one. Lilly has presented no evidence to the contrary, much less any direct evidence that Dr. Horne did not read or rely on manufacturer warnings.

2.    <u>If Lilly Had Tested and Warned, DES Would Never Have Been Used In Pregnant Women</u>

Lilly was negligent from day one in placing DES on the market for use by pregnant women without any testing or warning whatsoever. Had Lilly performed appropriate testing on DES in humans or animals prior to marketing DES for use in pregnancy, it would have discovered that the drug caused malformation, cancer, sterility, and a plethora of reproductive tract malformations in the exposed daughter. <u>See</u> Greene et. al., App. 17. DES never should have made it to the market. <u>See</u> Roberta J. Apfel, M.D., M.P.H. & Susan M. Gedaro, M.D., <u>To Do No Harm, DES and the Dilemmas of Modern Medicine</u> (Yale University Press 1984); Cynthia Orenberg, <u>DES: The Complete Story</u> (St. Martin's Press 1981); and Aaron M. Levine, <u>Identification of Manufacturer of Diethylstilbestrol (DES)</u>, in 46 Am. Jur. Proof of Facts 2d 59 (Christian C. Bjorkland ed., 1986).

Plaintiffs' OB/GYN experts, Dr. Piver and Dr. Falk, will testify that Defendant failed to test and warn of the dangers of DES, that Defendant knew or should have known that DES was an unreasonably dangerous drug, and that, had an adequate warning been given, DES would not have been prescribed to pregnant women in the ordinary course of OB/GYN practice. <u>See</u> Piver Statement, ¶6-14, App. 6 and Falk Statement, ¶2-8, App. 16. Had Defendant shared what it knew and should have known about DES, a reproductive tract-mutating teratogen to a developing fetus, with the medical community, no doctor would have prescribed this drug to a

pregnant woman and the Food and Drug Administration would not have approved it.  See Dieckmann, App. 3; Enders, et al., App. 4.

            3.                  The Multiplicity of Manufacturers Does Not Make Any Difference to the Heeding Presumption

In this case, Lilly is identified as the manufacturer of the DES that injured Plaintiff Joy Kasparian.  The critical question to the heeding presumption, then, is what warnings Lilly gave.  Lilly attempts to confuse that issue by positing that Dr. Horne could have learned about DES from other sources.  See Def. Memo., pg. 12.  Essentially, Lilly contends – supported by no authorities – that, since DES was sold and labeled by other manufacturers, it is somehow insulated from the heeding presumption regarding its drug.  Dr. Horne may have looked at other labeling or literature, the argument goes, therefore Plaintiffs cannot prove that a Lilly DES warning would have changed the course of Plaintiff's treatment.

Even if other manufacturers' warnings were relevant, Eli Lilly is still responsible for failing to warn for the following reasons:

1)      DES labeling was standardized upon Lilly's request.  Lilly's industry committee recommended that no additional warnings be added to DES when prescribed to pregnant women.  See Letter from Dr. Hines to Dr. Morrell, App. 8.  It is therefore inaccurate to say that there were many sources about DES independent of Eli Lilly and Company.

2)      Lilly was the largest supplier of DES, the foremost promoter of DES, the leading advocate, the primary source of information about DES and had the most detailmen promoting DES.  For example, in the 1969 entry for DES, Lilly is the *only* manufacturer to appear with the text of their labeling.  See 1969 PDR, App. 18, pg. 224.  For two decades starting in the early 1950's, Lilly recommended DES to the medical community to treat conditions in pregnant women without any warnings of serious and permanent injury to the fetus or contraindications

for pregnancy, See 1954 PDR, page 467, App. 13; 1959 PDR, page 699, App. 14; 1964 PDR, page 693, App. 15.

       3)    There was actual reliance by the OB/GYN community upon Lilly's expertise as a prudent drug manufacturer to test its products; physicians prescribed according to Lilly's representations in the PDR and other marketing publications that DES was safe and effective to use in accidents of pregnancy.  See Piver Statement, ¶7 & ¶9-11, App. 6.

      The Ninth Circuit addressed the heeding presumption in cases where multiple manufacturers provided similar warnings.  In Dalke v. The Upjohn Co., 555 F.2d 245 (9th Cir. 1977), the plaintiff filed suit against three manufacturers of tetracycline for tooth discoloration because she could not determine the brand of tetracycline she ingested.  Id., 555 F.2d at 247. The Ninth Circuit addressed the issue of proximate cause in a multi-defendant case.  Id., 555 F.2d at 248-49.  Defendants argued that, even if their warnings were inadequate, plaintiff's doctor could not recall which manufacturer's warnings he may have read.  Id., 555 F.2d at 249. The Court held:

> In our case, although Dr. Corlett could not recall *which* PDR entry or label he read, he indicated that he *had* read and relied on one of them.  In light of the similarity between the three companies' warnings we do not believe that his failure to identify the one specific entry he read should break the chain of causation.

Id.  As stated above, there is a presumption, absent evidence to the contrary, that Dr. Horne would have read one of the manufacturers' warnings, whether through product literature or the PDR.

      A reasonable juror could find that Dr. Horne would have received a Lilly warning, the industry would have followed the Lilly warning's lead, read the PDR, heard from a detailman, read a "Dear Doctor" letter, or in some other way a Lilly warning would have come to Dr. Horne's attention.

Furthermore, Edward Lynch, a pharmacist at the pharmacy that sold DES to Plaintiff Joy Kasparian's mother, stated that, if Lilly warned, he would pass that warning on to the customers who bought DES from him. See Lynch Deposition, pg. 9, App. 9. Defendant has presented no evidence to suggest that such a warning, regarding Lilly's brand of DES, would not have been heeded.

4.      Defendant's 1969 and 1970 Change in Its *Physicians' Desk Reference* Entry for DES Does Not Eliminate the Fact That Defendant Failed to Adequately Warn About DES

"Whether a manufacturer or distributor of DES should have foreseen it would be used for preventing miscarriages is a question of fact for the jury." Medics Pharm. Corp. v. Newman, 378 S.E.2d 487, 488 (Ga. Ct. App. 1989). For decades, Lilly's PDR entry, promotional material, and labeling read that it was for safe use in pregnancy. See 1954 PDR, page 467, App. 13; 1959 PDR, page 699, App. 14; 1964 PDR, page 693, App. 15. In 1951, Eli Lilly's publication De Re Medica advertised DES as the "most effective" drug to prevent miscarriage. See De Re Medica, pg. 211, attached as Exhibit 4 to the Affidavit of Dr. Julius Piver, App. 6. The information contained in these publications was accepted by the medical community until DES was banned for use in pregnant women in 1971 by the FDA. See Piver Statement, ¶ 7, App. 6.

Furthermore, while the 1969 and 1970 PDR do not directly reference the use of DES in pregnancy, such use is clearly contemplated by the language of the entry. Lilly states in the 1969 and 1970 PDR that a "possible adverse reaction" on the fetus exists, so "the risk of estrogen therapy should be weighed against the possible benefits when diethylstilbestrol is considered for use in a known pregnancy." 1969 PDR, pg. 819-20 and 1970 PDR pg. 833, attached as Exhibit 9 to Def. Memo. in Support of Summary Judgment. The PDR entries further state that while "nausea" is a side effect, its incidence is less in pregnant women, implying both that DES is used in pregnant women – despite the lack of indications for pregnant women in the

16

PDR – and that other side effects of DES would be less severe.  Given the testimony of Plaintiffs' experts that the prescription of DES to pregnant women was a standard practice, a jury could assume that Lilly knew that DES continued to be used on pregnant women for the purpose of preventing miscarriage.

Furthermore, the "possible adverse reaction" warning in the PDR can be seen by a jury as inadequate.  In the same 1969 PDR that includes the warning for DES, Lilly's warning for the drug Haldrone states that "[p]regnancy is a relative contraindication to corticosteroid therapy, particularly during the first trimester, because of the observation of fetal abnormalities in experimental animals."  1969 PDR, pg. 824, App. 18.  Similar animal studies existed for DES and related drugs prior to plaintiff's gestation, See Enders, App. 4; Greene, App. 17, but no similar warning was given by Lilly.  Since Plaintiffs have presented evidence that DES had no benefit for pregnant women, and significant harms for them, a jury could find that Lilly's PDR entry is an insufficient warning to a physician.

D.    PLAINTIFFS' CLAIMS OF BREACH OF WARRANTY ARE VIABLE

Defendant's arguments regarding Plaintiffs' claims of express warranty, implied warranty, and warranty for fitness of purpose essentially restate Defendant's erroneous claim that Plaintiffs have provided no evidence to show that Dr. Horne relied on their warnings. Plaintiffs demonstrated that a doctor following the standard of care in 1969 and 1970 would have prescribed DES to prevent miscarriage and would have relied on Lilly's warning in doing so.

E.    RICHARD FEDERICO'S CLAIM IS VALID

Defendant's argument against the claim of Richard Federico is that, as it is subsidiary to his wife's claim, it must fail if his wife's claim fails.  Plaintiffs do not dispute that a consortium claim's prerequisite is the claim of the spouse, but, as illustrated supra, Plaintiff Joy Kasparian

has put forth sufficient evidence that her claim cannot be dismissed.  Therefore, summary judgment is improper to Richard Federico's claims.

      F.      PLAINTIFFS ABANDON THEIR CLAIM FOR PUNITIVE DAMAGES

Plaintiffs concede that Massachusetts does not allow for punitive damages unless expressly authorized by statute, and no such statute applies to DES cases.  See Payton v. Abbott Lab's, 83 F.R.D. 382, 395 (D. Mass. 1979) (holding in a DES case there will be no need to determine punitive damages).

## IV. CONCLUSION

A reasonable juror could find that Lilly, the identified manufacturer of the DES in this case, played a major role in promoting DES.  Lilly has not produced any evidence that Dr. Horne found DES by his own research or would have ignored warnings had there been any.  The word on Thalidomide got out very quickly.  Plaintiffs can still rely on breach of warrantee and Plaintiffs' contention that DES, like Thalidomide, should never have been on the market to pregnant women.

Defendant's only argument against Plaintiff Richard Federico is that his wife's claims are insufficient.  As a reasonable juror could find for Joy Kasparian, they could also find that Richard Federico was injured through Defendant's actions.

WHEREFORE, Plaintiffs respectfully request that this Court deny Defendant Eli Lilly and Company's Motion for Summary Judgment.

Respectfully submitted,

AARON M. LEVINE AND ASSOCIATES


_____/s/ Aaron M. Levine_____
Aaron M. Levine, #7864
1320 Nineteenth Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

COUNSEL FOR PLAINTIFFS

19