IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOY KASPARIAN and RICHARD FEDERICO, JR.,<br><br>        Plaintiff<br><br>    v.<br><br>ELI LILLY AND COMPANY,<br><br>        Defendants. | CIVIL ACTION No.  06-CV-00290 (RMC) |

**DEFENDANT ELI LILLY AND COMPANY'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL
<u>ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS</u>**

**I.   INTRODUCTION**

Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents ("Motion to Compel") must be denied because the information sought is simply not relevant to any claims or defenses in this case.  Plaintiffs' First Set of Interrogatories and First Request for Production of Documents explicitly focus on research conducted by Dr. Herbert Horne, published in the Journal of Chronic Diseases in October, 1985 ("Horne Article").  The Horne Article was published fifteen years after Plaintiff Joy Kasparian was born, and fifteen years after any allegedly inadequate warning by Lilly allegedly caused a prescription for DES to be made.  It is indisputable that Dr. Horne had not begun research for his article at the time of Plaintiff's birth.  The discovery sought is not relevant to any claims or defenses in this suit.

Plaintiffs argue that information post dating the alleged wrong and alleged *in utero* injury may still be relevant to rebut Eli Lilly and Company's ("Lilly") statute of limitations defense.  But Lilly makes no statute of limitations argument after discovery in this case.  The vestigial affirmative defense of statute of limitations made in the Answer to the Complaint was

B3315319.5

superseded by discovery. Any statute of limitation defense is waived. Equally, the claim that documents sent by Dr. Horne to Ms. Kasparian's mother may have discouraged Plaintiffs from suing is belied by the fact that they did sue within the limitation period.

## II. BACKGROUND

1. Plaintiff Joy Kasparian, in her Complaint, alleges harms due to *in utero* exposure to DES in 1969 and 1970.[1]

2. Plaintiff did not herself take DES; the drug was prescribed to her mother during her pregnancy with Plaintiff.

3. Lilly is accused of publishing inadequate warnings regarding DES in 1969 or 1970, when Plaintiff was allegedly exposed *in utero* to DES.

4. The adequacy of Lilly's warnings can be measured only by the state of the art and medical knowledge as of 1969 and 1970.

5. The 1985 Horne Article and related research is not part of the state of the art as of 1969-1970.

6. Lilly does not and will not rely upon Dr. Horne's article or research to establish any part of the 1969-1970 state of medical knowledge or any part of its defense.

7. In October, 1985, Dr. Horne published an article regarding DES in the Journal of Chronic Diseases. *See* Docket Entry No. 14, App. 1. As discussed in his article, Dr. Horne researched the efficacy of DES in high risk pregnancies that he treated.

8. The Horne Article acknowledges that the research was partially funded by Lilly and that a Lilly employee provided statistical advice. *Id.*

---

[1] Plaintiff Richard Federico, Joy Kasparian's husband, asserts a claim for loss of consortium that is entirely dependent upon Joy Kasparian's claims that are discussed here. Therefore, all references to "Plaintiff" in this motion refer to Plaintiff Joy Kasparian.

9. Lilly had no communications with Dr. Horne related to DES until 1973. *See* Lilly's Supplemental Responses to Plaintiffs' First Set of Interrogatories, No. 1, dated February 20, 2007 (attached hereto at Appendix 1).

10. The Horne Article states that data collection for the study began after the first article associating DES with injury was published in 1971. Docket Entry No. 14, App. 1, p.874-875.

11. In response to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents and/or Tangible Things, Lilly produced all of the Dr. Horne documents in its possession related to Joy Kasparian and her mother Elaine Kasparian, being Plaintiff's mother's response to Dr. Horne's questionnaire. *See* Docket Entry No. 14, App. 6. This is the only document in Lilly's possession that may be relevant to this action.

12. As current medical literature makes clear, the daughters of Dr. Horne's patients, and study group, are now included in continuing research on DES funded by the National Institutes of Health.

### III. ARGUMENT

#### A. Federal Rule of Civil Procedure 26 Does Not Allow for Discovery of Irrelevant Information.

Federal Rule of Civil Procedure 26(b)(1) allows for discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." The United States Court of Appeals for the District Court of Columbia Circuit has recognized that "despite the fact that 'the boundaries defining information that is relevant to the subject matter involved in the action are necessarily vague and it is practically impossible to state a general rule by which they can be drawn,' it is also true that 'no one would suggest that discovery should be allowed of information that has no conceivable bearing on the case.'" *Food Lion, Inc. v. United Food & Commercial*

*Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997)(quoting 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2008, pp. 105-06 (1994)); *see also In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.' ")(quoting *Broadway & Ninety Sixth St. Realty Co. v. Loew's Inc.,* 21 F.R.D. 347, 352 (S.D.N.Y. 1958)).

A party seeking to compel discovery must first establish the relevance of the materials sought. *See Food Lion*, 103 F.3d at 1011, n. 7 (holding that the non-moving party's other arguments as to why the discovery sought should not be disclosed -- estoppel, qualified privilege, failure to balance relevance versus privacy interests and inadequacy of protective order to safeguard confidentiality -- did not have to be addressed because the movant had not established the relevance of the materials sought); *Doe v. District of Columbia*, 231 F.R.D. 27, 30 (D.D.C. 2005) (stating that "*once relevance has been established*, the burden is on the party objecting to interrogatories to show that the information sought is not readily available to it") (emphasis added) (internal citation omitted); *Alexander v. F.B.I.*, 192 F.R.D. 50, 53 (D.D.C. 2000) (same).

Plaintiff here has not shown how discovery directed to a study published fifteen years after her birth can be relevant to the pending action. To prove her claim, plaintiff must demonstrate 1) that Lilly's DES, as opposed to one of the dozens of other brands of this generic drug then available, was taken by her mother; 2) that Lilly made some warranties in that product literature for 1969-1970 that were breached; 3) that Lilly's FDA approved 1969-1970 warnings or representations were inadequate by the standards of 1969 and 1970; and 4) that her infertility was caused by *in utero* exposure to DES.

Plaintiff does not contend that Lilly's diethylstilbestrol itself was defective in any sense other than by inadequate literature and warnings. The essential claim by Plaintiff, then, is that the prescribing doctor would not have prescribed diethylstilbestrol at all except for Lilly's "inadequate" literature.

The 1985 Horne Article and underlying research is not part of the state of the art as of 1969-1970, and thus is irrelevant to the adequacy of the warning at issue in this case. Lilly does not and will not rely upon the article and Plaintiff cannot use it to establish any part of the 1969-1970 state of medical knowledge. Nothing in the article bears on the causation or identification burdens that Plaintiff must carry. *See Food Lion*, 103 F.3d at 1014 (denying a motion to compel where the movant failed to establish a sufficient nexus between the information sought "and the elements necessary to the underlying cause of action . . ."). Nothing about this 1985 article or the research done by Dr. Horne from and after 1971 can be relevant to any issue or defense, including whether Dr. Horne read or relied on Lilly's product literature in 1969 as opposed to relying on his own experience and training under the very doctors who developed the use of DES in pregnancy, or even on the literature of some other company that made this non-patented drug.

The subject matter of the Horne Article demonstrates the implausibility of a claim that anything about it is relevant to the claims or defenses in this case. Dr. Horne researched and reported on the efficacy of DES in high risk pregnancies where he was the treating doctor. Data collection for the study began in 1971. Horne Article at p. 874. Questionnaire responses from several hundred women who took DES prescribed by Dr. Horne were collected, then analyzed for the Horne Article. The Horne Article is a retrospective review of the efficacy of DES in improving the outcome of pregnancy in the women who took it. The Article does not present data on anything to do with DES daughters such as Plaintiff.

**B.    Plaintiff's Arguments that her Requests Are Relevant to the Claims or Defenses in this Case Are Conjecture Not Supported By The Horne Article.**

**1.    Lilly has not raised the statute of limitations defense in its Motion for Summary Judgment and does not intend to do so.**

Plaintiff argues that the statute of limitations is at issue in this case and, therefore, any funding by Lilly of Dr. Horne's study is somehow relevant to this action. While it is hard to follow how that might be so, the argument is unavailing here because Lilly advances no statute of limitations defense, and waives it. It became clear after Plaintiff's deposition that the statute of limitations is not implicated in this action. Lilly raised statute of limitations as an affirmative defense in its Answer to avoid waiving the defense before discovery was completed. Lilly has not asserted the statute of limitations defense in its Motion for Summary Judgment. Lilly waives any statute of limitation issue in this case.[2] The requested discovery is not relevant to any claim or defense.

**2.    There is no evidence that the discovery requested is relevant to the issue of product identification.**

In an attempt to show the relevancy of Plaintiff's request, Plaintiff next claims that "if Lilly and Dr. Horne worked together during Plaintiff Joy Kasparian's gestation or thereafter, then it is more likely than not Lilly's DES was the brand given to Joy Kasparian's mother." Motion to Compel, p. 6. The leap that Plaintiffs propose is not a logical one, but it is sufficient here to state that Lilly had no communications with Dr. Horne related to DES prior to 1973. Lilly did not "work" with Dr. Horne during Plaintiff Joy Kasparian's gestation in 1969 or 1970.

---

[2] Prior to filing this motion, Plaintiff's attorney offered to waive the discovery sought in exchange for Lilly stipulating to all of the issues in the case, namely "1) Plaintiff's DES exposure; 2) that the Lilly product is identified; 3) that the Statute of Limitations will be waived; and 4) that the Plaintiff's Mullerian anomaly and infertility were caused by DES exposure". *See* September 15, 2006 Letter from A. Levine to J. Dillon. Docket Entry No. 14, App. 7. Lilly declined.

### 3. The requested discovery is not relevant to Plaintiff's burden to show that the prescribing physician relied upon Lilly's warning.

To meet her burden at trial, Plaintiff must demonstrate that (1) Lilly breached its duty to warn Dr. Horne of the risks associated with diethylstilbestrol and (2) because of that failure, Dr. Horne prescribed diethylstilbestrol. *See Knowlton v. Deseret Medical, Inc.,* 930 F.2d 116, 120 n.2 (1st Cir. 1991)("It is generally accepted that in a case involving medical products prescribed or used by a physician or trained medical personnel, the warning runs to the physician not the patient."). Plaintiff claims that "the most relevant evidence to Dr. Horne's state of mind regarding Defendant's DES would be Dr. Horne's dealings with Defendant." Motion to Compel, p. 5. Plaintiff's assertion of relevance rests on the premise that Lilly and Dr. Horne were dealing together on "DES" in 1969 and 1970. Lilly now has supplemented its discovery responses to make clear that Lilly first dealt with Dr. Horne in 1973.

Moreover, circumstantial evidence suggests that Dr. Horne did not rely on Lilly's literature or warnings in prescribing DES in 1969 or 1970. At the time of Plaintiff's mother's pregnancy with Ms. Kasparian, Lilly's product literature did not indicate or suggest use of the drug to prevent accidents of pregnancy. *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971 (copies attached as Exhibit 8 to Snyder Aff. in Support of Summary Judgment); 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference (copies attached as Exhibit 9 to Snyder Aff. in Support of Summary Judgment). Since Dr. Horne prescribed the drug for an indication not in Lilly's literature, it is unlikely that Dr. Horne read and relied on Lilly's literature for the prescription in this case.

### C. A Privilege Log is Not Necessary Where the Information Sought Is Not Relevant to Claims or Defenses.

Lilly's Objections to Plaintiff's First Set of Interrogatories and First Request for Production of Documents And/Or Tangible Things note that Plaintiff's sweeping requests are

broad enough to encompass privileged attorney client and work product material. This is not a blanket assertion of privilege, but an acknowledgement that Lilly and its lawyers have been engaged in DES litigation since 1973 and those attorneys may certainly have taken note of Dr. Horne's research and article.

Cases related to DES have been filed against Lilly in every year from 1973 through the present. The Interrogatories and Requests are so broad, e.g. "copies of all records in your possession relating to the Horne DES study", that they would encompass discussions and documents by and among Lilly's attorneys on the subject matter of the Horne Article. *See* Plaintiffs' First Set of Interrogatories and First Request for Production of Documents and/or Tangible Things to Defendant Eli Lilly and Company, Request for Production No. 3.

If the court finds that the Plaintiff has met the burden of proving the relevance of these requests, Lilly will produce a privilege log detailing the privileged documents at issue. As discussed earlier, however, the burden of justifying non-disclosure on privilege or other grounds does not shift to Lilly unless Plaintiff can establish that the information sought is relevant to the claims or defenses in this lawsuit. *See supra*, Section III.A.

**D.    Burden**

Lilly further objected to Plaintiff's interrogatories and document requests because of the heavy burden Lilly would face to comply with these requests. Lilly does have in its possession copies of medical questionnaires completed by some of Dr. Horne's patients. Those questionnaires were reviewed by a Lilly employee to develop statistical data for the article, as the Horne Article makes clear.

Plaintiff's discovery requests seek access to private health information of patients who are not parties to this lawsuit and are not related to any party in the suit. Request for Production Number 3 requests copies of all records related to the Horne DES study "including, but not

limited to, all data collected, data summaries, results of the study, patient histories, participant histories, participant surveys, participant names and addresses, status reports and preliminary findings." Plaintiffs advance no reason why the medical histories of women treated by Dr. Horne have any relevance to the claims that she and her husband assert here. Moreover, the information contained in these records is private health information now protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. 1320d et seq. To produce this irrelevant information, Lilly would bear the burden of reviewing and redacting all of the patient questionnaires to comply with HIPAA. Therefore, Lilly objects to Plaintiff's requests as overly burdensome. Lilly did find that a questionnaire from Ms. Kasparian's mother was among the records available. Since Ms. Kasparian's mother had executed a HIPAA medical record release, Lilly forwarded this document in response to the Document Requests.

## IV.  CONCLUSION

For the foregoing reasons, Lilly respectfully requests this Court deny Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents because none of the material sought is relevant to the Plaintiff's claims.

        Respectfully submitted,

        ELI LILLY AND COMPANY


          /s/ James J. Dillon
        James J. Dillon, D.C. Bar # 485593
        Foley Hoag LLP
        155 Seaport Boulevard
        World Trade Center West
        Boston, MA 02210-2600
        (617) 832-1000

Dated: February 20, 2007

## **CERTIFICATE OF SERVICE**

      I certify that on February 20, 2007, a true copy of the foregoing document was served by U.S. First Class Mail, postage prepaid, upon:

Aaron M. Levine, Esq.
Aaron M. Levine & Associates, P.A.
1320 Nineteenth Street, N.W., Suite 500
Washington, DC 20036
Attorneys for Plaintiff

                                                /s/ James J. Dillon
                                                James J. Dillon

Case 1:06-cv-00290-RMC   Document 17   Filed 02/20/2007   Page 11 of 11