IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOY KASPARIAN and RICHARD FEDERICO, JR., <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, <br><br> Defendants. | CIVIL ACTION No. 06-CV-00290 (RMC) |

**DEFENDANT ELI LILLY AND COMPANY'S**
**REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

Eli Lilly and Company ("Lilly") moved for summary judgment in this case because Plaintiffs cannot show that the product literature and warnings that Plaintiffs allege to be inadequate, and the cause of the prescription in this case, were Lilly's. To prove negligence, strict liability, breach of warranty and negligent misrepresentation, Plaintiffs must produce evidence that Lilly's product literature caused Dr. Herbert Horne to prescribe DES to Mrs. Kasparian's mother.

In their Opposition to Lilly's Motion for Summary Judgment ("Pls. Opp." or "Plaintiffs' Opposition"), Plaintiffs attempt to pass off product identification evidence (i.e. evidence that Mrs. Kasparian was exposed to *Lilly's DES*) as reliance evidence (i.e. evidence that Dr. Horne relied on *Lilly's DES product literature* when prescribing the drug). Product identification and reliance are two totally distinct aspects of plaintiffs' burden of proof; only reliance is at issue in Lilly's Motion for Summary Judgment.[1] Product identification addresses whether or not Mrs. Kasparian was exposed to a particular brand of drug. Reliance addresses whether or not Dr.

---

[1] Plaintiffs' product identification evidence has raised a material question of disputed fact that must be resolved by a jury. Lilly will certainly contest product identification at trial, but that issue is not relevant to the Motion for Summary Judgment before the Court.

B3322671.4

Horne relied on a particular manufacturer's product literature, or some other information, in deciding to prescribe DES to Mrs. Kasparian's mother. To prevail in the failure to warn context, Plaintiffs have to show both that *Lilly's product literature* caused DES to be prescribed, and that *Lilly's DES* actually caused Mrs. Kasparian's alleged physical injuries.

The product identification evidence cited in Plaintiffs' Opposition -- the testimony of Edward Lynch, Harold Sparr and Dr. Carney -- is simply irrelevant to Plaintiffs' reliance burden and should not be considered in deciding the present motion.[2] Further, the only things in Plaintiffs' Opposition that even resemble evidence of reliance -- Dr. Piver's testimony, Dr. Hines' letter and Lilly's PDR listing -- cannot satisfy Plaintiffs' burden of proof because they provide no information about what Dr. Horne specifically relied upon when he prescribed DES. Dr. Piver is not competent to testify that Lilly's warnings were the basis of some national standard of care for prescribing DES, nor is he competent to testify that Dr. Horne followed said standard. Further, Dr. Hines' letter and Lilly's PDR listing do not establish that all drug manufacturers adopted Lilly's warnings in their product literature, nor do they establish that Dr. Horne relied on any manufacturer's product literature in choosing to prescribe DES. For all these reasons, Lilly's motion for summary judgment should be granted.

A.     **Plaintiffs Cannot Prove Reliance with Product Identification Evidence**

Plaintiffs' product identification evidence -- the testimony of pharmacist Edward Lynch, the testimony of pharmacist Harold Sparr and the Congressional testimony of Dr. Thomas Carney -- is irrelevant to the issue of reliance and cannot prevent summary judgment.

---

[2] Plaintiffs also cite a Dr. Horne's 1985 medical article regarding the efficacy of DES. As the Court has already recognized in denying Plaintiffs' Motion to Compel, Docket No. 19, evidence regarding Dr. Horne's article is not relevant to reliance or any other issue in this case. The article was not published until 1985, and data collection did not begin until 1971. Docket No. 14, App. 1, at 874-875. The research, analysis and compilation of data regarding the efficacy of DES that Dr. Horne began *after* Mrs. Kasparian's mother was prescribed DES have no bearing on what information Dr. Horne relied upon in deciding to prescribe DES in 1969 and 1970.

       1.     <u>The Testimony of Edward Lynch</u>

Plaintiffs rely on the testimony of Edward Lynch, a pharmacist, for the proposition that the pharmacy allegedly used by Mrs. Kasparian's mother stocked Lilly's DES. Mr. Lynch's testimony does nothing more than suggest that the identified pharmacy stocked and dispensed the Lilly brand of DES. Transcript of Deposition of Edward Lynch ("Lynch Tr."), Docket No. 20, at 8. Mr. Lynch did not recall filling any prescriptions that were written by Dr. Horne and did not know what Dr. Horne's practices were with respect to prescribing particular brands. *Id.* at 63 to 64. Plaintiffs have provided no medical records or prescription records demonstrating that Dr. Horne prescribed Lilly's diethylstilbestrol, as opposed to a generic prescription or a specific prescription for a non-Lilly brand. Pls. Opp., at 4 ¶ 11. Without any knowledge of Dr. Horne's prescribing practices, any statement regarding the stocking and dispensing practices of the pharmacy allegedly used by Mrs. Kasparian's mother is irrelevant.

Moreover, the issue is not what brand of DES, of the more than 60 available at the time, the pharmacist allegedly *dispensed* to Mrs. Kasparian, but *what manufacturer's literature was relied upon by her prescribing physician* in deciding to prescribe DES. It is Dr. Horne, not Mr. Lynch, who decided to prescribe DES and wrote a prescription slip. Mr. Lynch admits that he did not recall receiving any warnings from Lilly regarding DES. Lynch Tr., Docket No. 20, at 54. Massachusetts has adopted the learned intermediary doctrine, which requires prescribing physicians, not drug manufacturer's or pharmacists, to directly communicate the risks and side effects of a particular prescription drug to their patients. *Cottam v. CVS Pharm.*, 764 N.E.2d 814, 821 (Mass. 2002). It is the doctor who knows the patient, her medical history, and the specifics of her medical condition, and is able to weigh this history and the benefits and risks of treating with a prescription drug. *Id.* at 820-21. The doctor ultimately chooses to write a prescription for a particular medication. Whether the pharmacist would have read a

manufacturer's product warnings is irrelevant to the question of whether a drug would have been prescribed.

        2.      <u>The Testimony of Harold Sparr</u>

Plaintiffs' rely on a statement from pharmacist Harold B. Sparr to establish (1) that Lilly's DES was dispensed to Mrs. Kasparian's mother, (2) that Lilly "dominated the DES market," and (3) that the Red and Blue Books are not accurate descriptions of the national DES market. Sparr Statement, Docket No. 15, App. 7, ¶¶ 6-11. Mr. Sparr's statement is irrelevant on at least two levels.[3] Most importantly, the general purpose of Mr. Sparr's statement is to prove that Lilly's DES was dispensed to Mrs. Kasparian's mother. Again, identifying the brand of DES dispensed to Mrs. Kasparian's mother does nothing to identify the materials or information that Dr. Horne relied upon when he wrote her DES prescription. Further, Mr. Sparr's statement is not even relevant to the brand of DES dispensed to Mrs. Kasparian's mother because it relates to the stocking and dispensing practices of pharmacies in *Hingham*, Massachusetts rather than the stocking and dispensing practices of pharmacies in *Belmont*, Massachusetts where Batson's Pharmacy was located. *See id.* ¶¶ 4, 7-8; Lynch Tr., Docket No. 20, at 7-8 (testifying that Batson's pharmacy was located in Belmont, Massachusetts). Mr. Sparr's testimony is completely irrelevant to this matter and should not be considered on summary judgment.

        3.      <u>Dr. Thomas Carney's Congressional Testimony</u>

Plaintiffs cite the Congressional testimony of Dr. Thomas Carney for the mistaken proposition that Lilly manufactured 75% of the DES sold for human consumption in the United States. Here again, Dr. Carney's testimony bears solely on the issue of product identification,

---

[3] Mr. Sparr is incompetent to provide testimony in this case for a number of reasons. Lilly has filed a motion to strike Mr. Sparr's statement as irrelevant, contradictory and lacking a basis in personal knowledge. *See* Defendant Eli Lilly and Company's Motion to Strike the Affidavit of Harold Sparr, R.Ph., Docket No. 20.

*i.e.* whether or not Lilly dominated the national DES market, and has nothing whatsoever to do with the materials and information Dr. Horne relied upon when prescribing DES to Mrs. Kasparian's mother.

Moreover, taken in context, Dr. Carney's testimony does not even support Plaintiffs' argument that Lilly dominated the national DES market. Dr. Carney's testimony related to the quantity of diethylstilbestrol that Lilly sold as a raw chemical compound for use by a multitude of different manufacturers for purposes ranging from pharmaceutical products to livestock feed. In fact, the portion of Dr. Carney's testimony cited by Plaintiffs related specifically to *livestock feed*:

> Mr. Moss:  What percentage of stilbestrol consumed in the country is produced by Eli Lilly? . . .
>
> Dr. Carney:  Maybe as high as 75 percent.
>
> Mr. Dingell:  *And the bulk of it goes into animals?*
>
> Dr. Carney:  *The bulk of it goes into animals.*
>
> Mr. Dingell:  *Principally cattle?*
>
> Dr. Carney:  *Principally cattle, and sheep have been approved for use.*

Carney Testimony, Docket No. 15, App. 11 (emphasis added). This testimony in no way represents Lilly's share in the relevant market of pharmaceutical pills for human use. Each company that placed DES on the pharmaceutical market, with its own FDA approved product literature, is responsible for the product it made. For all these reasons, Dr. Carney's testimony should not be considered in resolving Lilly's Motion for Summary Judgment.

### B. Plaintiffs Have Produced No Reliance Evidence That Bears on *Dr. Horne's* Individual Standard of Care for Prescribing DES

Courts applying Massachusetts law require plaintiffs to establish reliance by the *relevant* prescribing physician. *See e.g. Garside v. Osco Drug, Inc.*, 976 F.2d 77, 78-79 (1st Cir. 1992) (examining *Dr. Pryharski's* affidavit detailing his standard of care for prescribing McKesson's Phenobarbital); *Linnen v. A.H. Robbins Co., Inc.*, 1999 Mass. Super. LEXIS 552 at *11-*12 (Mass. Super. Ct. 1999) (examining what *Dr. Landzberg* did to investigate the safety of fen-phen before prescribing it to plaintiff). Here, Plaintiffs cannot meet their reliance burden because none of their evidence sheds any light on whether *Dr. Horne* relied on his own experience, the product literature of manufacturers, the PDR, information learned from colleagues, information learned from conferences or some other source when he decided to prescribe DES.

#### 1. Dr. Piver's Testimony Should be Excluded as Incompetent Under Rule 56(e) and Untimely Under Local Rule 26.2(a)[4]

Plaintiffs offer the testimony of Dr. Piver to establish that Dr. Horne would have prescribed DES to Ms. Kasparian's mother based on Lilly's pre-1969-'70 literature as well as what he believes was the general standard of obstetric care in the late 1960's and early 1970's. *See* Statement of Dr. Julius S. Piver ("Piver Statement"), Docket No. 15, App. 6. Plaintiffs cannot meet their reliance burden with Dr. Piver's testimony.

Dr. Piver sheds no light on *Dr. Horne's* specific practice with respect to reading and heeding manufacturer literature when prescribing drugs for his patients.[5] As such, Dr. Piver's

---

[4] Lilly has filed a motion to strike Dr. Piver's testimony. *See* Defendant Eli Lilly and Company's Motion to Strike the Testimony of Julius S. Piver, M.D., Docket No. 21.

[5] Dr. Piver's testimony does support Lilly's argument that Dr. Horne could have prescribed DES on the basis of information gleaned from a variety of sources *other than* Lilly's product literature. Dr. Piver states that he gained his familiarity with the literature and labeling of DES "from exchanging information regarding the care and treatment of OB/GYN patients with other physicians at conferences, meetings, seminars, and symposiums attended by OB/GYNs from all over America." Piver Statement, Docket No. 15, App. 6, ¶ 3. Dr. Horne may or may not have obtained similar information from such events. There is no basis to simply presume that Dr. Horne attended

testimony is completely irrelevant to this case and cannot be used to assist plaintiffs in meeting their reliance burden. Further, Dr. Piver has no basis in personal knowledge for claiming that Dr. Horne would have followed what Dr. Piver describes as the standard of obstetric care with respect to the prescription of DES in 1969 and 1970. Without more information about Dr. Horne's specific DES prescription practices, Dr. Piver's testimony constitutes rank speculation that should be excluded from consideration on summary judgment. *See* Fed. R. Civ. P. 56(e); *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (holding that an affidavit that fails to identify reliable sources of personal knowledge is nothing more than speculation and cannot satisfy Rule 56(e)); *Judicial Watch v. United States DOC*, 2004 U.S. Dist. LEXIS 19648 at 6-8 (D.D.C. 2004) (striking a statement based on opinion rather than personal knowledge pursuant to Fed. R. Civ. P. 56(e) (citation omitted)).

Finally, Dr. Piver's testimony should be excluded as untimely under the Local Rules of this Court. Local Rule 26.2(a) provides:

> A party that without substantial justification fails to disclose information required by this rule or by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Dr. Piver's testimony was disclosed for the first time in Plaintiffs' Opposition. Plaintiffs offer no justification for their failure to disclose Dr. Piver prior to the close of discovery in this case. Indeed, it appears that Plaintiffs' counsel has had Dr. Piver's statement in their possession since February 1, 2006. *See* Piver Statement, Docket No. 15, App. 6, at 3 (dating the statement February 1, 2006). Plaintiffs cannot claim that they could not anticipate the grounds for Lilly's

---

the same events as Dr. Piver and absorbed Dr. Piver's penchant for following Lilly's literature as to DES, *except* for when Lilly had no indication for use of DES in pregnancy. As Lilly has not had the opportunity to depose Dr. Piver, there is no way to tell the extent to which the information gained from these events was based on Lilly's product literature.

Motion for Summary Judgment prior to the close of discovery as their counsel has litigated hundreds of DES cases in numerous jurisdictions for many years. Plaintiffs' failure to disclose Dr. Piver's testimony has deprived Lilly of the opportunity to depose this witness on the basis of his description of the standard of care for obstetric patients in 1969 and 1970 as well as on the basis of his knowledge, if any, of Dr. Horne's particular standard of care for the prescription of DES.

> 2. <u>Dr. Hines' Letter to Squibb Has No Bearing on What If Any Warnings Dr. Horne Relied Upon</u>

Plaintiffs rely on a 1941 letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb) for the proposition that there is no need to identify whose warnings Dr. Horne relied upon because Lilly would be responsible for the content regardless. This letter addresses several companies' applications for FDA approval for diethylstilbestrol *in 1941 for uses not including the prevention of certain accidents in pregnancy*. It has no bearing on what Lilly's or any other manufacturer's product literature looked like in 1969 and 1970, nor does it shed light on what Dr. Horne relied upon in allegedly prescribing DES. The 1941 letter from Dr. Hines was written years before DES was approved by the FDA for use in pregnancy in 1947. After 1947, Lilly's (and other manufacturers') warnings changed several times, and each updated version, for each company, was approved by the FDA. These changes included, for Lilly, the deletion of the accidents in pregnancy indication as reflected in Lilly's product literature in 1970 and 1971.

> 3. <u>Lilly's PDR Listing Has No Bearing on What If Any Warnings Dr. Horne Relied Upon</u>

Plaintiffs' argue that the exclusive listing of Lilly's DES product literature in the PDR makes it more likely than not that Dr. Horne relied on Lilly's literature when he prescribed DES. Pls. Opp., at 16-17. Plaintiffs have provided no evidence, however, that Dr. Horne actually read and relied on the product literature in the PDR, as opposed to his own experience, the product

literature of another DES manufacturer, or information obtained from colleagues or conferences. Without testimony from Dr. Horne himself, a nurse or employee who worked with him, a document referencing his use of the PDR, in short, without *something* to show that the PDR figured into Dr. Horne's prescription decisions, the mere fact that Lilly's product literature appeared therein cannot assist Plaintiffs in meeting their reliance burden.

Moreover, circumstantial evidence suggests that Dr. Horne did not rely on Lilly's PDR entry for DES in 1969 or 1970. At that time, Lilly's PDR entry did not indicate or suggest use of the drug to prevent accidents of pregnancy. *See* 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference, Docket No. 13, Ex. 9. Since Dr. Horne prescribed the drug for an indication not in Lilly's PDR entry, it is unlikely that Dr. Horne read and relied on that publication when he prescribed DES to Mrs. Kasparian's mother.

### C.     Plaintiffs Cannot Rely On the Heeding Presumption to Identify the Allegedly Defective Warning At Issue.

To gain the benefit of a rebuttable "heeding presumption" that an adequate warning would have been considered by the prescribing doctor, would have altered the doctor's prescription decision, and, therefore, would have prevented the injury, Plaintiffs *first must show that the particular defendant failed to warn the specific physician who wrote the prescription.* This predicate proof establishes the nexus between the defendant's act -- the warning -- and the prescription that allegedly caused the harm. Plaintiffs have not supplied this proof. Without this link, Lilly and its product literature simply have no connection to the events at issue.

Plaintiffs attempt to hurdle their burden to establish the basis of Dr. Horne's prescription decisions and proceed directly to the heeding presumption. Even Plaintiffs' cited authority makes clear, however, that the heeding presumption is not implicated until and unless the sources relied upon by the prescribing physician in making prescription decisions are identified. *See e.g.,*

*Garside,* 976 F.2d at 82 (defendant did not dispute that its inadequate warnings were at issue); *Brochu*, 642 F.2d at 659-660 (plaintiff established that prescribing physician would have followed an adequate warning from defendant if such a warning was communicated to him); *Linnen*, 1999 Mass. Super. LEXIS 552 at *11-*12 (plaintiff established that prescribing physician sought information about fen-phen from a pharmacist and an expert in pulmonary hypertension who may have relied on defendants' package insert and PDR listing); *see also Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 982 (8th Cir. 1969) (plaintiff established that defendant's detail man introduced prescribing doctor to its drug); *Medics Pharmaceutical Corp. v. Newman*, 378 S.E.2d 487, 488 (Ga. Ct. App. 1989) (plaintiff established that defendant marketed its DES to prescribing physician and that its package insert was at issue). Plaintiffs cannot gain the benefit of the heeding presumption based on these cases because they have not shown which manufacturer's warnings, if any, Dr. Horne read and relied upon.

    **D.**    **Plaintiffs' Authority "Rejecting" Lilly's Reliance Argument Is Easily Distinguishable**

Plaintiffs cite to four decisions from outside this jurisdiction that have "rejected" Lilly's reliance argument. None of these cases constitute binding or persuasive authority. The *Casale* case settled before the judge even issued a decision. The *Hansch*, *Miskulin* and *Baughn* cases are easily distinguishable. The plaintiffs in all three cases were born in the early 1960s, Hansch in 1960, Miskulin in 1964 and Baughn in 1965. *See* Plaintiff Susan Lynn Hansch's Responses to Defendants' Amended Uniform Preliminary Requests for Information ("*Hansch* Interrogs."), at No. 1 (excerpts attached hereto as Ex. 1); Complaint for Damages, filed in *Miskulin v. Abbott Labs., et al.*, No. 03-CV-418517, at ¶ 22 (excerpts attached hereto as Ex. 2); *Baughn v. Eli Lilly & Co.*, 356 F. Supp. 2d 1177, 1178 (D. Kan. 2005) (stating that plaintiff was born in 1965). In 1960, 1964 and 1965, Lilly's product literature for DES was significantly different than it was in

1969 and 1970. In particular, in the early 1960s, Lilly's literature included an indication for use during pregnancy. *See* 1960, 1964 and 1965 entries for Lilly's DES in the Physician's Desk Reference (attached hereto as Ex. 3). This indication for use during pregnancy was removed from Lilly's literature in 1969 and 1970. *See* 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference, Docket No. 13, Ex. 9.

The change in Lilly's literature in 1969 and 1970 is important. In *Hansch*, *Miskulin* and *Baughn,* Lilly's motions for summary judgment were premised solely on the fact that plaintiffs could not produce any evidence that the prescribing physicians relied on its literature. The prescribing physicians in those cases were deceased and there was no testimony from anyone familiar with their prescription practices who could offer affirmative evidence of reliance. Here, however, Lilly can point to the fact that Dr. Horne's prescription of DES during pregnancy, while not improper, was inconsistent with Lilly's product literature. The fact that Lilly's 1969 and 1970 literature did not indicate use of DES during pregnancy combined with the fact that Dr. Horne prescribed DES to Ms. Kasparian's mother despite the change, suggests strongly that Dr. Horne was not relying on Lilly's literature. For these reasons, *Hansch, Miskulin* and *Baughn* are distinguishable and do not control the result in this case.

## CONCLUSION

For all the foregoing reasons, Lilly respectfully requests that its Motion for Summary Judgment be GRANTED.

## **REQUEST FOR HEARING**

Pursuant to LCvR 7.1(f), Lilly requests a hearing on its Motion for Summary Judgment.

                          Respectfully submitted,

                          ELI LILLY AND COMPANY

                          /s/ James J. Dillon
                          James J. Dillon
                          D.C. Bar No. 485593
                          Foley Hoag LLP
                          155 Seaport Boulevard
                          World Trade Center West
                          Boston, MA 02210-2600
                          (617) 832-1000

Dated: March 2, 2007