IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOY KASPARIAN and RICHARD FEDERICO, JR., <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, <br><br> Defendants. | CIVIL ACTION No.  06-CV-00290 (RMC) |

**DEFENDANT ELI LILLY AND COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE THE TESTIMONY OF DR. JULIUS S. PIVER, M.D.**

Defendant Eli Lilly and Company ("Lilly") has filed a dispositive motion arguing that plaintiffs Joy Kasparian and Richard Frederico, Jr. ("plaintiffs") cannot prove that prescribing physician Herbert Horne, M.D. relied on Lilly's product literature as opposed to the product literature of another manufacturer, conversations with colleagues, his own medical training or information gleaned from medical conferences in prescribing DES to Mrs. Kasparian's mother. *See* Docket No. 13.  In support of their opposition to Lilly's Motion, plaintiffs submitted a statement from Julius S. Piver, M.D. purporting to establish a national standard of care for prescribing DES.  *See* Docket No. 15, App. 6.  Lilly has moved to strike the Piver statement as untimely under Local Rule 26.1 and incompetent under Fed. R. Civ. P. 56(e).

In their Opposition to Lilly's Motion to Strike the Testimony Julius S. Piver, M.D. ("Pls. Opp."), plaintiffs argue (1) that Lilly was not prejudiced by the late disclosure of the Piver statement because its substance was disclosed in other DES litigation, and (2) that Dr. Piver is competent to establish the standard of care for prescribing DES that *all* OB/GYNs, including Dr. Horne, followed in the 1970s.  In fact, Lilly's prior knowledge of Dr. Piver from other DES litigation did not prevent prejudice *in this case* because Lilly could not depose him, name

B3331595.3

rebuttal experts or properly weigh the likelihood of success on summary judgment. Plaintiffs offer no substantial justification for their late disclosure; they made a strategic choice to withhold Dr. Piver's testimony until summary judgment at the risk of having it excluded as untimely. Further, Dr. Piver's testimony is incompetent because he has no personal knowledge of Dr. Horne's standard of care for prescribing DES and thus has no basis for asserting that Dr. Horne would have followed a purportedly "national" standard of care for prescribing DES. A substantial portion of Dr. Piver's statement must be stricken as speculation under Fed. R. Civ. P. 56(e) assuming it is not excluded altogether as untimely under Local Rule 26.2(a).

### A.  Plaintiffs Concede That There is No Substantial Justification for Their Late Disclosure of Dr. Piver's Testimony

Plaintiffs make no excuses for disclosing Dr. Piver's testimony for the first time at summary judgment. Instead, they argue that their late disclosure does not prejudice Lilly because Lilly has encountered Dr. Piver in *other* DES litigation. Pls. Opp., at 1-2. Certainly it is true that Lilly knew who Dr. Piver was prior to filing its dispositive motion, but Lilly certainly *did not know* that plaintiffs would rely on him *in this litigation*. Following plaintiffs' logic, Lilly should henceforth anticipate in *every* case that *every* expert plaintiffs' counsel has previously disclosed might be called upon to provide testimony at summary judgment and at trial.

Discovery is not supposed to operate in this manner. Parties are supposed to know the identities of opposing expert witnesses and the substance of their opinions prior to the close of discovery so they can carefully evaluate the experts' data and conclusions, take depositions, decide whether to name rebuttal experts and weigh the chances of success on a motion for summary judgment. Where a party's late disclosure of expert testimony effectively circumvents the discovery process without substantial justification, federal courts properly exclude that testimony. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-59 (7th Cir. 2004) (affirming

exclusion of expert testimony first disclosed at summary judgment where the experts were previously identified and deposed strictly as fact witnesses because plaintiff's only justification for the late disclosure was a misunderstanding of Fed. R. Civ. P. 26, and because defendant was deprived of the opportunity to question the witnesses as experts, retain rebuttal experts and challenge the expert testimony under Fed. R. Evid. 702); *Lohnes v. Level 3 Communs, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (affirming exclusion of expert testimony disclosed at summary judgment where plaintiff provided no explanation for failing to disclose the testimony before the close of discovery and defendant was deprived "of the opportunity to depose the proposed expert, challenge his credentials, solicit experts of its own, or conduct expert-related discovery"); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998) (affirming exclusion of expert testimony disclosed at summary judgment where defendant knew of the expert prior to the close of discovery because plaintiff's justification for late disclosure -- to preview the testimony of defendant's expert -- was not substantial, and because defendant was prejudiced by having drafted a motion for summary judgment based in part on plaintiff's lack of sufficient expert evidence).

What makes plaintiffs' late disclosure in this case so egregious is the ease with which they could have complied with the Court's Scheduling Order and Rule 26(a)(2). Plaintiffs' counsel apparently knew Dr. Piver's credentials and the substance of his report by 2005, *see* Pls. Opp., at 1 (stating that Dr. Piver was disclosed to Lilly in another DES case in 2005). Assuming this is true, there was absolutely nothing stopping plaintiffs from supplementing their expert disclosures *in this case* well before the close of discovery. Plaintiffs' choice to wait to disclose Dr. Piver until after Lilly filed its dispositive motion was at best unjustified and at worst a deliberate "sneak attack." *Cf. Lohnes*, 272 F.3d at 60 (calling plaintiff's choice to submit an

expert affidavit at summary judgment, more than three months after the close of discovery and three weeks before a final pretrial conference, a "sneak attack").

### B. Dr. Piver Lacks the Requisite Knowledge to Implicate Lilly's Product Literature in Dr. Horne's Standard of Care for Prescribing DES

To survive summary judgment, plaintiffs must offer competent evidence that Lilly's product literature, as opposed to another manufacturer's literature or some other source of information, formed the basis of Dr. Horne's standard of care for prescribing DES. If and only if plaintiffs implicate *Lilly's* literature are they entitled to the presumption that Dr. Horne would have read and relied on that literature in prescribing DES to Mrs. Kasparian's mother. Plaintiffs rely on Dr. Piver's testimony to implicate Lilly's literature in Dr. Horne's prescription of DES.

Dr. Piver has no personal knowledge that allows him to testify that Lilly's product literature figured into Dr. Horne's DES prescription practices. There is nothing in Dr. Piver's statement or his *curriculum vitae* that suggests he even met Dr. Horne. Furthermore, Dr. Piver has no personal knowledge that allows him to testify that Dr. Horne would have followed what Dr. Piver believes was the national standard of care for prescribing DES. Dr. Piver does not know whether he and Dr. Horne attended the same conferences, meetings, seminars and symposia during the 1960s and 1970s, nor does he know that they would have gleaned the same information from those events.

Most importantly, circumstantial evidence suggests that in 1969 and 1970, Dr. Horne *did not* follow Dr. Piver's purported standard of care for prescribing DES, which included review of Lilly's product literature. Piver Statement, Docket No. 15, App. 6, ¶¶ 9-10, 12-13. Dr. Horne prescribed DES to Mrs. Kasparian's mother to prevent accidents of pregnancy despite the fact that Lilly's product literature did not indicate such use. *See* 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference, Docket No. 13, Ex. 9. That Dr. Horne's standard of

care for prescribing DES in 1969 and 1970 was inconsistent with both Lilly's product literature and Dr. Piver's standard of care further evidences Dr. Piver's lack of personal knowledge of Dr. Horne. The following portions of Dr. Piver's affidavit implying that Dr. Horne would follow a national standard of care for prescribing DES should be stricken as speculation pursuant to Fed. R. Civ. P. 56(e):[1]

- The *national* standard of care in 1970 was to prescribe DES in accordance with Lilly labeling which contained neither warning of any injury to the fetus, nor any contraindication in pregnancy. Piver Statement, Docket No. 15, App. 6, ¶ 9 (emphasis added).

- Had Lilly contraindicated or warned in their labeling, literature, or a "Dear Doctor" letter of any serious or permanent risks to the daughter *in utero*, it would have been a departure from the standard of care for *all* OB/GYN doctors to ignore such warnings. *Id.* at ¶ 10 (emphasis added).

- It was the customary ordinary and usual practice of *OB/GYNs in major population centers* in the U.S. to read, rely upon, and heed Lilly literature, "Dear Doctor" letters, company detail men and PDR entries regarding the specific risks of in utero DES exposure. *Id.* at ¶ 13 (emphasis added).

- Had Eli Lilly issued a similar warning of serious injury to the exposed daughter, it would have been a departure from the standard of care for *an obstetrician* to prescribe DES to a pregnant woman. *Id.* at ¶ 14 (emphasis added).

Finally, the personal knowledge of Dr. Horne that Dr. Piver lacks is exactly what plaintiffs need to avoid summary judgment. The importance of *Garside v. Osco Drug, Inc.*, 976 F.2d 77 (1st Cir. 1992) and *Linnen v. A.H. Robbins Co.*, Mass. Super LEXIS 552 (Mass. Super. Ct. 1999) lies in their requirement that plaintiffs offer evidence of *Dr. Horne's* specific standard of care for prescribing DES and no other. Plaintiffs cannot trigger the heeding presumption without some competent evidence that *Lilly's* product literature formed the basis of Dr. Horne's

---

[1] *See Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (holding that an affidavit that fails to identify reliable sources of personal knowledge is nothing more than speculation and cannot satisfy Rule 56(e)); *see also Judicial Watch v. United States DOC*, 2004 U.S. Dist. LEXIS 19648 at 6-8 (D.D.C. 2004) (striking a statement based on opinion rather than personal knowledge pursuant to Fed. R. Civ. P. 56(e) (citation omitted).

standard of care for prescribing DES. Dr. Piver's speculation about Dr. Horne's prescription practices is not sufficient to meet this burden.

### C. Lilly's Authorities Are Directly on Point in Supporting the Proposition that Dr. Piver's Testimony is Incompetent Under Rule 56(e)

Plaintiffs argument that *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) and *Judicial Watch v. United States DOC*, 224 F.R.D. 261, 264-65 (D.D.C. 2004) are irrelevant to Lilly's motion to strike is demonstrably false. In fact, these cases are directly on point and support the exclusion of those parts of Dr. Piver's statement that lack a foundation in personal knowledge.

While *Alyeska Pipeline* is indeed a FOIA case, the D.C. Circuit stated at the outset of its opinion that "FOIA cases are not immune to summary judgment requirements." *Alyeska Pipeline*, 856 F.2d at 313. In the part of the case cited by Lilly, the Court affirmed the district court's grant of summary judgment to the EPA because the affidavit Alyeska Pipeline relied on to create a material question of disputed fact did not meet the personal knowledge requirement of Rule 56(e):

> Henman's affidavit presented no reliable evidence to support [the] alleged knowledge; in sum, therefore, his assertion that he knows the scope of the investigation is really nothing more than speculation.

*Id.* at 314, n. 45. Similarly, in *Judicial Watch*, another FOIA case, Judge Lamberth struck several portions of an affidavit filed in opposition to a motion for summary judgment because:

> Contrary to Rule 56(e)'s competence requirement, Stewart would not qualify as an affiant who would be competent to testify at trial to the factual basis underlying her assertions given that she has no independent basis of personal knowledge.

*Judicial Watch*, 224 F.R.D. at 264-65.[2] *Alyeska Pipeline* and *Judicial Watch* stand firmly for the proposition that affidavits submitted in opposition to a motion for summary judgment must be based on personal knowledge or be stricken in accordance with Rule 56(e).

## CONCLUSION

For all the foregoing reasons, Lilly respectfully requests that its Motion for Summary Judgment be GRANTED

## REQUEST FOR HEARING

Pursuant to LCvR 7.1(f), Lilly requests a hearing on its Motion for Summary Judgment.

Respectfully submitted,

ELI LILLY AND COMPANY

/s/ James J. Dillon
James J. Dillon
D.C. Bar No. 485593
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

Dated: March 20, 2007

---

[2] *Judicial Watch* is particularly persuasive authority because there, as here, the Court was resolving a motion to strike premised on a violation of Rule 56(e).